RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0302p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>            *Plaintiff-Appellee,*<br><br>    *v.*<br><br>PATRICK MICHAEL REILLY, aka PATRICK<br>MICHAEL RILEY,<br>            *Defendant-Appellant.* | No. 09-6453 |

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 08-00081-001—Jennifer B. Coffman, Chief District Judge.

Decided and Filed: December 2, 2011

Before: GILMAN and KETHLEDGE, Circuit Judges; LUDINGTON, District
Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Andrew Martin Stephens, ANDREW M. STEPHENS & ASSOCIATES,
Lexington, Kentucky, for Appellant. Charles P. Wisdom, Jr., John Patrick Grant,
ASSISTANT UNITED STATES ATTORNEYS, Lexington, Kentucky, for Appellee.

_____

## OPINION
_____

        LUDINGTON, District Judge. Patrick Reilly pled guilty to two counts of
distribution of child pornography and was sentenced to 151 months in custody. He
appeals the imposition of that sentence, arguing that although it is within the United
States Sentencing Guidelines range of 151 to 188 months, the sentence is substantively
unreasonable. We affirm.

_____

[*]The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of
Michigan, sitting by designation.

1

I.

The Kentucky State Police began investigating Reilly in early 2008 for his potential involvement in child pornography.  A woman who had met Reilly on the internet contacted the police after Reilly proposed including a child in their sexual activities and sent her five videos containing images of children engaging in graphic sexual acts with adults.

Initiating an undercover investigation, a male police detective posed as the woman online.  After he sent Reilly a message that a fourteen-year-old girl had taken up residence in the woman's home, Reilly responded with instructions for grooming the child for sexual activity.  A short time later, Reilly sent seven more videos to the woman's online account.  The videos contained images of female children engaging in graphic sexual acts with adults.  Reilly instructed the woman to watch the videos with the child.  Making plans to meet the woman and child at a hotel, Reilly wrote that he intended to videotape himself having sex with the child.  Reilly later modified the travel arrangements, planning instead for the woman and child to travel to Reilly's home in Tennessee when his wife and child would be out of town.

Police then executed a search warrant for Reilly's residence, seizing a computer.  Forensic examination of the computer revealed that Reilly had exchanged child pornography with forty-nine people.  Police found more than a thousand photos and videos containing child pornography, some involving children as young as four years old.  Police also found a series of messages between Reilly and another woman who he had met online.  Messages recovered from this woman's computer showed that Reilly requested that the woman's three-year-old daughter perform oral sex on him.  The request was not complied with.

A grand jury indicted Reilly on one count of enticement, twelve counts of child pornography distribution, and two counts of forfeiture.  Pursuant to a plea agreement, Reilly pled guilty to two counts of distributing child pornography in violation of 18 U.S.C. § 2252(a)(2).  In his presentencing memorandum, Reilly moved for a departure under § 5K of the Sentencing Guidelines and a variance under 18 U.S.C.

§ 3553(a) based on his extraordinary contribution to his country as a soldier. His decade of service included three combat tours with the United States Army as an improvised explosive device (IED) inspector in Iraq and Afghanistan, during which he sustained repeated concussions from IEDs. His final tour was cut short by an IED that fractured his back, necessitating surgery. At his sentencing hearing in 2009, a psychologist testified that Reilly had sustained organic brain injury while in the service, which, combined with his pain medications, led to his interest in child pornography. The district court denied Reilly's motion for a downward departure and variance, sentencing him to the most lenient sentence recommended by the Sentencing Guidelines, 151 months. This timely appeal followed.

## II.

"The question of whether a sentence is reasonable is determined using the abuse-of-discretion standard of review." *United States v. Webb*, 616 F.3d 605, 609 (6th Cir. 2010). Reasonableness "has both a procedural and substantive component." *United States v. Brown*, 579 F.3d 672, 677 (6th Cir. 2009) (citing *United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006)). When a party like Reilly does not challenge the procedural reasonableness of his sentence, however, this Court limits its review to whether the sentence was substantively unreasonable. *See United States v. Lanning*, 633 F.3d 469, 474 (6th Cir. 2011) (quoting *United States v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008)).

"A sentence will be found to be substantively unreasonable when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008) (internal quotation marks omitted) (quoting *United States v. Borho*, 485 F.3d 904, 908 (6th Cir. 2007)).

Reilly argues "that given all the factors, including most importantly, a complete and total lack of criminal history and a beautiful service record, that a departure and/or variance was appropriate." Appellant's Br. 11. We find his argument unpersuasive.

A.

Congress created the United States Sentencing Commission, the drafter of the Sentencing Guidelines, as part of the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551–3742; 28 U.S.C. §§ 991–998.  Among its assignments, the Commission was tasked with the responsibility to

> establish sentencing policies and practices for the Federal criminal justice system that —
> (A) assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2) of title 18, United States Code;
> (B) provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices; and
> (C) reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice process[.]

28 U.S.C. § 991(b)(1).  Subsection (A) references § 3553(a)(2), which describes the general purposes of sentencing, including punishment, deterrence, incapacitation, and rehabilitation.  *See* 18 U.S.C. § 3553(a)(2).  Subsection (B) references the competing interests that are balanced in crafting a sentencing range — reducing unjustified disparities while preserving the district court's power to justly tailor the individual punishment to the particular crime.

In the wake of *Booker*, the Guidelines sentencing range is no longer mandatory, of course, but advisory.  *See United States v. Booker*, 543 U.S. 220, 245 (2005).  Yet the Guidelines continue to inform district courts' sentencing decisions.  "As a matter of administration and to secure nationwide consistency," the Court instructs, "the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 50 (2007).  To reduce unwarranted sentencing disparities, the Guidelines do more than provide a recommended range, they enumerate specific factors that the district court should — and should not — consider in deciding whether to depart from the advisory sentencing range.

Specifically, § 5H of the Guidelines identifies a number of offender characteristics that may be "relevant" to "the determination of whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H intro. cmt. (2009).[1] One subsection, for example, identifies military service as a possible ground for downward departure. *Id.* § 5H1.11. Crucially, however, Congress has specifically instructed that child crimes and sexual offenses are to be treated differently than other types of crimes — the "sole grounds" permissible for a downward departure are those "expressly enumerated" in Park 5K. *Id.* § 5K2.0(b); *see also id.* app. C, amend. 649 (2003) (noting that the amendments to §§ 5K2.0 and 5K2.22 were "made directly by [Congress as part of] the PROTECT ACT, Pub. L. 108-21"). Neither a defendant's lack of prior criminal history nor his or her military service are enumerated in § 5K. Accordingly, although these considerations are permissible grounds of departure for other types of crimes, these two factors are specifically excluded from consideration for child crimes and sexual offenses. *See id.* §§ 4A1.3(b) (identifying possible downward departure for criminal history); 5H1.11 (identifying possible downward departure for military service). As the Guidelines commentary notes make explicit: "The standard for a downward departure in child crimes and sexual offenses differs from the standard for other departures." *Id*. § 5K2.0 cmt. (4)(B). Moreover, the notes caution:

> As reaffirmed in the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 (the "PROTECT ACT", Public Law 108-21), circumstances warranting departure should be rare. Departures were never intended to permit sentencing courts to substitute their policy judgments for those of Congress and the Sentencing Commission. Departure in such circumstances would produce unwarranted sentencing disparity, which the Sentencing Reform Act was designed to avoid.

*Id*. § 5K2.0 background cmt. Thus, the Guidelines prohibited the district court from departing downward from Reilly's sentencing range based on either his lack of prior

---

[1]Because Reilly was sentenced in 2009, and because no ex post facto issue is presented in this case, we apply the 2009 Guidelines manual. *See United States v. Abboud*, Nos. 09–4078, 09–4079, 2011 WL 4469676, at *2 (6th Cir. Sept. 28, 2011) (per curiam) (quoting Guidelines § 1B1.11(a)) (noting that absent an ex post facto problem, "the guidelines themselves provide that a sentencing court 'shall use the Guidelines Manual in effect on the date that the defendant is sentenced' ").

criminal history or his exemplary service in the armed forces.**2** Granting Reilly's motion for a downward departure would have violated both the text of the Guidelines and the intent of Congress.

In any event, "we do not review a district court's decision not to depart downward unless the record shows that the district court was unaware of, or did not understand, its discretion to make such a departure." *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008) (citing *United States v. Puckett*, 422 F.3d 340, 344 (6th Cir. 2005)); *see also United States v. Lucas*, 357 F.3d 599, 609 (6th Cir. 2004) ("A district court's failure to grant a downward departure can only be reviewed by us upon appeal if the lower court erroneously believed that it lacked authority to grant such a departure as a matter of law."). Such is not the case here. Thus, the district court's decision not to depart downward is not reviewable by this Court.

B.

Reilly's argument that a variance is "appropriate" is likewise "simply beyond the scope of our appellate review, which looks to whether the sentence is reasonable, as opposed to whether in the first instance we would have imposed the same sentence." *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006). "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall v. United States*, 552 U.S. 38, 51 (2007). Moreover, even if one overlooks the semantic flaws of Reilly's argument to consider the substance of his contentions, his sentence was in fact substantively reasonable.

As a preliminary matter, although Reilly's military service and lack of criminal history were not relevant to the "departure" determination under the Guidelines, they were permissible considerations in the "variance" determination under 18 U.S.C.

---

**2**Indeed, the Guidelines do take into account Reilly's lack of prior convictions — his sentencing range was that of the lowest of the criminal history categories (category I). The Guidelines prohibit the district court from departing downward based on this factor, which was already accounted for in setting Reilly's sentencing range.

§ 3553(a).  That section identifies seven factors a court shall consider in imposing a sentence.  The factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed —
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B)to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for —
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines —
> (i) issued by the Sentencing Commission . . .
> (ii) that . . . are in effect on the date the defendant is sentenced . . .
> (5) any pertinent policy statement —
> (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28 . . . ; and
> (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Consequently, while "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process," courts must also remain conscious that "the range of choice dictated by the facts of the case is significantly broadened [under § 3553(a)]."  *Gall*, 552 U.S. at 50 n.6, 59 (internal quotation marks omitted).

Nevertheless, on appellate review, "[a] properly calculated advisory guidelines range represents a starting point for substantive-reasonableness review because it is one of the § 3553(a) factors and because the guidelines purport to take into consideration most, if not all, of the other § 3553(a) factors." *United States v. Holcomb*, 625 F.3d 287, 293 (6th Cir. 2010) (quoting *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008)); *see generally United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en

banc) (discussing relationship between the Guidelines and the § 3553(a) factors).  And Reilly concedes that the district court properly calculated the Guidelines range in his case.

In this Court, "[s]entences that fall within the applicable Guidelines range are rebuttably presumed to be reasonable." *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011) (citing *Vonner*, 516 F.3d at 389).  As an en banc panel of this Court recently explained: "when there is a confluence between the national views of the Sentencing Commission and the independent views of a sentencing judge, that double determination significantly increases the likelihood that the sentence is a reasonable one." *Vonner*, 516 F.3d at 389 (citations and internal quotation marks omitted) (quoting *Rita v. United States*, 551 U.S. 338, 347 (2007)).

After applying the presumption of reasonableness, the appellate court must "take into account the totality of the circumstances," while recognizing that "[t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case." *Gall*, 552 U.S. at 51.  Consequently, the sentencing decision is reviewed under a deferential abuse-of-discretion standard; indeed, the decision "will in most cases be due substantial deference." *Rita*, 551 U.S. at 363 (quoting *Koon v. United States*, 518 U.S. 81, 98 (1996)).

As noted above, demonstrating that the district court could have lawfully imposed a more lenient — indeed, a disparate — sentence is not sufficient.[3]  *See Gall*, 552 U.S. at 51 (quoted *supra*); *see also Rita*, 551 U.S. at 354 (affirming the substantive reasonableness of the sentence because "we simply cannot say that [the defendant's] special circumstances are special enough that, in light of § 3553(a), they require a sentence lower than the sentence the Guidelines provide"); *United States v. Brown*, 579 F.3d 672, 687 (6th Cir. 2009) ("Ultimately, Defendant's arguments appear to contend that, given his personal characteristics, a different sentence was *justified*.  While we

---

[3]The sentencing court, of course, is required to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [§ 3553(a)(2)]."  18 U.S.C. § 3553(a).  On review, however, the appellate court's task is different — it must determine whether a different sentence was "required." *Rita*, 551 U.S. at 354.

might agree, he has not shown that a different sentence was *required*." (citing *United States v. Jackson*, 466 F.3d 537, 540 (6th Cir. 2006))).  Rather, Reilly must demonstrate that the sentence imposed is substantively unreasonable.  He has not done so.

Reilly had a distinguished military career.   He suffered injury in the service of his country, which may have contributed to his criminal misconduct in this case.  And prior to this case, he had no criminal record.  However, he also downloaded more than one thousand images and videos containing child pornography.  He exchanged child pornography with nearly fifty people.  He sent child pornography to a woman's online account and instructed the woman to watch the videos with a child to groom the child for sexual activity.  And he made plans to shift from viewer of child pornography to active participant when he planned to videotape himself sexually abusing the child. Under the totality of the circumstances, his sentence of 151 months — at the lowest end of the Guidelines range of 151 to 188 months — is substantively reasonable.

\*     \*     \*

We affirm the decision of the district court.