NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0271n.06

No. 15-3003

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Plaintiff-Appellee,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>ON APPEAL FROM THE</td></tr>
<tr><td>v.</td><td>)</td><td>UNITED STATES DISTRICT</td></tr>
<tr><td></td><td>)</td><td>COURT FOR THE</td></tr>
<tr><td>DARNELL NASH,</td><td>)</td><td>NORTHERN DISTRICT OF</td></tr>
<tr><td></td><td>)</td><td>OHIO</td></tr>
<tr><td>Defendant-Appellant.</td><td>)</td><td></td></tr>
</table>

**FILED**
May 17, 2016
DEBORAH S. HUNT, Clerk

Before: COOK and KETHLEDGE, Circuit Judges; SARGUS, District Judge.[*]

KETHLEDGE, Circuit Judge. Darnell Nash pled guilty to numerous charges of mail and wire fraud, identity theft, and money laundering. The district court sentenced her to 175 months' imprisonment. She appeals her sentence. We reject her arguments and affirm.

I.

Between March 2012 and January 2013, Nash and several accomplices conspired to file fraudulent claims for unemployment insurance in at least six states. Nash registered as a fake employer in those states. Then, in low-income neighborhoods, she and her co-conspirators distributed flyers purporting to offer financial assistance. When people called the hotline on the flyers, one of the conspirators asked for the callers' names, dates of birth, and Social Security

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

numbers. The conspirators then used that information to apply for unemployment benefits. Nash obtained over $360,000 from the state unemployment agencies through this scheme.

A federal grand jury indicted Nash on one count of conspiracy to commit mail and wire fraud, ten counts of aiding and abetting wire fraud, twenty counts of aiding and abetting mail fraud, one count of aiding and abetting aggravated identify theft, and one count of aiding and abetting money laundering. *See* 18 U.S.C. §§ 1349, 1343, 1341, 1028A(a)(1), 1957, 2. Nash pled guilty to all counts.

The district court calculated a sentencing guidelines range of 151 to 188 months, based in part on a two-level enhancement for defrauding vulnerable victims, and a four-level enhancement for defrauding over 50 victims. *See* U.S.S.G. §§ 3A1.1(b), 2B1.1. The court sentenced Nash to 151 months' imprisonment for all the wire and mail fraud counts, a concurrent term of 120 months for money laundering, and a consecutive term of 24 months for identity theft, for a total of 175 months. The court also ordered Nash to pay $361,341 in restitution. This appeal followed.

## II.

We review the reasonableness of the district court's sentence for an abuse of discretion. *United States v. Volkman*, 797 F.3d 377, 398 (6th Cir. 2015). We review the court's legal conclusions regarding the sentencing guidelines de novo, and its factual findings when applying the guidelines for clear error. *United States v. Galloway*, 439 F.3d 320, 322 (6th Cir. 2006).

### A.

Nash argues that the court had insufficient evidence to apply the vulnerable-victim enhancement to her sentence. Section 3A1.1(b) of the Sentencing Guidelines provides for a two-level enhancement when "the defendant knew or should have known that a victim of the offense

was a vulnerable victim." A vulnerable victim is someone who is "unusually vulnerable . . . due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1(b), App. Note 2. This unusual susceptibility includes victims "predisposed to the very scam" at issue. *See United States v. Brawner*, 173 F.3d 966, 973 (6th Cir. 1999).

Here, Nash targeted low-income neighborhoods with flyers stating that "[m]any American families are struggling under an increasing number of bills, debts, and financial obligations. When you and your family are experiencing this stress call us[.] We can help!" Nash thus crafted a fraudulent message to which she thought her audience would be "particularly susceptible." That her scheme netted $360,000 suggests that her audience was as susceptible as Nash thought it would be. The district court did not clearly err in finding the enhancement applicable.

B.

Nash also argues that the court had insufficient evidence to apply the multiple-victim enhancement to her sentence. The version of the Sentencing Guidelines in place when the court sentenced Nash included a four-level enhancement for fraud offenses "involv[ing] 50 or more victims[.]" U.S.S.G. § 2B1.1(b)(2)(B) (2014). In identity-theft cases, a victim is anyone who suffered an actual loss as well as anyone "whose means of identification was used unlawfully or without authority." U.S.S.G. § 2B1.1, App. Note 4(E).

Nash admits that she fraudulently used more than 50 people's identities. She contends that those people were not victims, however, because they voluntarily provided their information. But those people did not consent to the use of their information in a mail and wire

fraud scheme. Suffice it to say that victims of identity theft are victims for purposes of this enhancement. *See* U.S.S.G. § 2B1.1, App. Note 4(E).

C.

Finally, Nash argues that the court's refusal to grant her a downward departure from her guidelines range was substantively unreasonable. A district court may grant a downward departure from the guidelines range for mitigating circumstances not adequately represented in the guidelines. U.S.S.G. § 5K2.0(a)(2)(B). But "we do not review a district court's decision not to depart downward unless the record shows that the district court was unaware of, or did not understand, its discretion to make such a departure." *United States v. Reilly*, 662 F.3d 754, 759 (6th Cir. 2011).

The mitigating circumstance that Nash cites here is her gender dysphoria, and her concomitant desire to transition from a man to a woman. But the district court allowed both Nash and her lawyer to argue at length about Nash's gender dysphoria at sentencing. And the court then explicitly considered and rejected a downward departure. R. 126 at PageID 749; 752-57; 763. The record thus makes clear that the court was aware of its discretion to make a downward departure and chose not to make one. Thus we have nothing further to review.

The district court's judgment is affirmed.