RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0026p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

*v.*

No. 18-4143

ANDREW DEMMA,

*Defendant-Appellee*.

_____

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 3:17-cr-00062-1—Walter H. Rice, District Judge.

Argued: December 12, 2019

Decided and Filed: January 24, 2020

Before: GILMAN, KETHLEDGE, and READLER, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Mary B. Young, UNITED STATES ATTORNEY'S OFFICE, Columbus, Ohio, for Appellant. Richard E. Mayhall, RICHARD E. MAYHALL, Springfield, Ohio, for Appellee. **ON BRIEF:** Mary B. Young, UNITED STATES ATTORNEY'S OFFICE, Columbus, Ohio, for Appellant. Richard E. Mayhall, RICHARD E. MAYHALL, Springfield, Ohio, for Appellee.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge. This is yet another case raising the issue of whether a one-day sentence for a defendant convicted of possessing child pornography is

reasonable.  For the reasons set forth below, we determine that it is not.  We therefore **VACATE** the sentence imposed by the district court and **REMAND** the case for resentencing.

## I. BACKGROUND

In February 2015, FBI agents seized a computer server used to host a child-pornography website.  The website operated through "Tor," a network designed for anonymous internet use.  Users of Tor must download special software onto their computers, followed by the entry of an obscure web address not found on publicly available search engines, in order to access particular websites.  The users' IP addresses and locations are then shielded by Tor from the websites they visit.

Shortly after seizing the server, the FBI began monitoring the activity of a particular user, "domine21."  Agents observed domine21 accessing 107 "threads" containing child pornography over a five-day period.  The FBI traced the IP address associated with domine21 to Andrew Demma's residence in Dayton, Ohio.  In August 2015, the FBI executed a search warrant and seized several electronic devices from the residence, finding more than 3,600 images and 230 videos in Demma's possession.  Hundreds of the images depicted adult men raping and otherwise sexually abusing prepubescent girls.

Demma pleaded guilty to possessing child pornography, such possession being in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).  Under United States Sentencing Guidelines (U.S.S.G.) § 2G2.2, the base-offense level for violating the statute is 18.  The probation officer's Presentence Report called for enhancements of the base-offense level due to Demma's possession of images displaying prepubescent children (a two-level increase); his possession of images involving sadomasochistic conduct, including images of insertion or intercourse with prepubescent children (a four-level increase); his use of a computer (a two-level increase); and the fact that the offense involved 600 or more images (a five-level increase).  Demma's acceptance of responsibility (a two-level decrease) and his assistance to authorities (a one-level decrease) were listed as mitigating factors.  Based on the above calculations, the probation officer computed an adjusted offense level of 28.  This offense level, together with Demma's

criminal history category of I, corresponds to a term of imprisonment between 78 and 97 months under U.S.S.G. § 2G2.2.  The officer recommended a sentence of 78 months' imprisonment.

Contrary to the probation officer's recommendation, Demma submitted a sentencing memorandum asking the district court to impose a noncustodial sentence.  The memorandum described Demma's supportive upbringing, educational background, and lack of criminal history.  It also described Demma's experience in the Army, where Demma served honorably for over five years between 2005 and 2010.  Demma, who admits to having been long addicted to adult pornography, said that he was introduced to child pornography during his second deployment to Iraq.  He acknowledged that he continued to view child pornography up until the FBI searched his home in 2015.

The memorandum also offers an account of Demma's experience with post-traumatic stress disorder (PTSD) as a result of his military service.  Demma began seeing Dr. Frederick Peterson, a psychologist at a nearby Veterans Affairs Hospital, after the FBI searched Demma's home.  Dr. Peterson diagnosed Demma with PTSD, and the doctor's records describe a range of violent and traumatic episodes during Demma's tours of duty in Iraq.  At the sentencing hearing, Dr. Peterson expressed his opinion that Demma's use of child pornography stemmed from his "objectification" of children as a result of combat trauma.

The memorandum further cites Dr. David Tennenbaum, a forensic psychologist who submitted a report asserting that Demma's use of child pornography "is directly resultant from experiencing the ravages of war as this impacts children, viewing the deaths of children." Dr. Tennenbaum, at Demma's sentencing hearing, expressed his belief that Demma sought child pornography in order to "bring pain to himself, to redo within his mind the pain he experienced in Iraq."

Finally, Demma offered the testimony of psychologist Dr. David Roush, who runs a sex-offender treatment program in which Demma enrolled following his arrest.  Dr. Roush, contrary to the opinions of Dr. Peterson and Dr. Tennenbaum, did not believe that Demma's use of child pornography was directly caused by Demma's service in Iraq.  He was instead of the opinion that

Demma was already attracted to minors and simply happened to be in Iraq when he became exposed to child pornography.

The government submitted its own sentencing memorandum, arguing that the factors outlined in 18 U.S.C. § 3553(a) supported the imposition of a custodial sentence on Demma. Highlighting the sophistication of Demma's access to the pornography, as well as the large number of images of "prepubescent children being anally and vaginally penetrated by adult males," the government emphasized the need for just punishment and the sentencing goal of providing deterrence. The government also contended that Demma could successfully continue his treatment in the Bureau of Prisons Residential Sex Offender Treatment Program and the Sex Offender Management Program during incarceration.

After hearing from Demma, his parents, and his treating psychologists, as well as considering several victim statements read into evidence, the district court rejected the sentence recommended by the Sentencing Guidelines. It instead sentenced Demma to only one day for time already served. The court also required Demma to undergo 10 years of supervised release and pay $45,000 in total restitution to nine identified victims.

In declining to impose a custodial sentence, the district court articulated its disagreement with the Sentencing Guidelines on policy grounds, explaining that "the guidelines, while certainly they're a starting point and they do achieve a certain amount of consistency," are "artificially high because everyone secures most of the enhancements." It further explained that the Guidelines made it difficult to distinguish between offenders.

The district court also cited the need to impose a sentence reflecting Demma's individualized characteristics, noting that "Mr. Demma, because of his experiences, is to be treated differently than someone who simply allowed his curiosity to get the better of him." In particular, the court focused on Demma's PTSD diagnosis. The court, pointing to the reports of the three psychologists, commented that "very few people come home from a combat situation without suffering lasting damage." It relied most heavily on Dr. Tennenbaum's testimony that Demma's experience in Iraq was "the direct cause of his involvement with child pornography."

In light of the doctors' opinions, the court determined that Demma "wound up in criminal court as an unintended consequence" of his voluntary service in the Army.

The district court nevertheless noted the impact of Demma's crime on his victims, explaining that the possession of child pornography is "an offense that has no finite ending." It also discussed the role of such possession in creating a market for the production and distribution of child pornography, and it described the number of images possessed by Demma as "if not the highest the Court has ever seen in a possession of child pornography [case], certainly not the lowest either." Other considerations, however, carried greater weight in the court's analysis.

The district court specifically discussed Demma's decision to voluntarily seek out treatment after he was arrested, his low risk of reoffending, and the potentially detrimental effect of a prison sentence on Demma's treatment, as articulated by Dr. Peterson and Dr. Roush. It also considered Demma's low risk for committing a "contact offense," an inquiry that the court called the "overarching question" to be answered prior to sentencing. Discussing general deterrence, the court noted that, while it "recognize[d] the need to consider general deterrence, there are certain types of crimes, this being one of them, for which general deterrence is . . . more myth than reality."

The government timely appealed, arguing that the one-day sentence was substantively unreasonable under 18 U.S.C. § 3553(a). We now turn to the merits of the government's argument.

## II. ANALYSIS

### A.      Standard of review

The federal Sentencing Guidelines are no longer mandatory after the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). "[T]hey still," however, "'should be the starting point and the initial benchmark' for choosing a defendant's sentence." *United States v. Bistline*, 665 F.3d 758, 761 (6th Cir. 2012) (*Bistline I*) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). The district court must calculate the range prescribed by the Guidelines before varying from them. *Gall*, 552 U.S. at 49. And, after allowing the parties to argue for a particular

sentence, the district court must weigh and apply the range of factors outlined in 18 U.S.C. § 3553(a). *Id.* at 49–50.

A sentence may be vacated on appeal if it is substantively unreasonable—that is, where the "sentence is too long . . . or too short." *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 44 (2019) (quoting *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018)). This inquiry requires us to determine whether "the court placed too much weight on some of the § 3553(a) factors and too little on others." *Rayyan*, 885 F.3d at 442. We thus "take into account the totality of the circumstances," *Gall*, 552 U.S. at 51, in applying this "deferential abuse-of-discretion standard," *United States v. Reilly*, 662 F.3d 754, 761 (6th Cir. 2011). We may also "consider the extent of the deviation" in deciding whether the district court abused its discretion. *Gall*, 552 U.S. at 51.

True enough, the Supreme Court has acknowledged that "courts may vary [from federal Guidelines ranges] based solely on policy considerations, including disagreements with the [Guidelines]." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (citation and internal quotation marks omitted). But district courts in this circuit seeking to reject U.S.S.G. § 2G2.2 on policy grounds face "close scrutiny." *Bistline I*, 665 F.3d at 763. As this court has explained regarding § 2G2.2: "[W]hen a guideline comes bristling with Congress's own empirical and value judgments—or even just value judgments—the district court that seeks to disagree with the guideline on policy grounds faces a considerably more formidable task than the district court did in *Kimbrough* [which dealt with crack-cocaine guidelines that, unlike § 2G2.2, were not implicitly attributed to Congress]." *Id.* at 763–64.

## B.     Disagreement with the Guidelines

Demma, however, argues that the district court adequately explained its disagreement with the Guidelines on policy grounds and that its variance is justified on this basis. We respectfully disagree. This court has explained that, to reject U.S.S.G. § 2G2.2 on policy grounds, a district court must consider the values of punishment and retribution. *Bistline I*, 665 F.3d at 764.

In relevant part, U.S.S.G. § 2G2.2 provides as follows:

**(a)** Base Offense Level:

> **(1)** 18, if the defendant is convicted of 18 U.S.C. § 1466A(b),
>
> > § 2252(a)(4), § 2252A(a)(5), or § 2252A(a)(7).
>
> . . . .

**(b)** Specific Offense Characteristics

> . . . .
>
> **(2)** If the material involved a prepubescent minor or a minor who had not attained the age of 12 years, increase by 2 levels.
>
> . . . .
>
> **(4)** If the offense involved material that portrays (A) sadistic or masochistic conduct or other depictions of violence; or (B) sexual abuse or exploitation of an infant or toddler, increase by 4 levels.
>
> . . . .
>
> **(6)** If the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material, increase by 2 levels.
>
> **(7)** If the offense involved—
>
> > . . . .
>
> > **(D)**   600 or more images, increase by 5 levels.

In *United States v. Bistline*, 720 F.3d 631 (6th Cir. 2013) (*Bistline II*), the district court had rejected U.S.S.G. § 2G2.2 for reasons similar to those stated by the district court in the present case. The district court in *Bistline II* had expressed "a continued disagreement with the range of sentences that result under these guidelines in the average case," pointing out that "every case" involved computer use and "almost every case" involved a large number of images. *Id*. at 633. The district court below likewise noted that "everyone" who is brought into federal court for possessing child pornography receives the same enhancements, which, the court claimed, makes it impossible to distinguish between individual defendants.

This court in *Bistline II* concluded that such reasoning does not withstand close scrutiny. *Id*. It explained that the policy underpinnings of § 2G2.2 "were not only empirical, but retributive—that they included not only deterrence, but punishment." *Id*. at 633 (quoting *Bistline*

*I*, 665 F.3d at 764). Because the district court in *Bistline II* "did not acknowledge, much less refute, those bases for [the defendant's] guidelines range," its out-of-hand rejection of § 2G2.2 on policy grounds was not adequately explained. *Id.* The district court here, like the court in *Bistline II*, did not discuss the retributive purposes of § 2G2.2 in rejecting the offense-level increases recommended under the Guidelines, and its disagreement with the Guidelines cannot justify its decision to ignore the delineated enhancements.

Moreover, as in *Bistline II*, the district court's disagreement with the Guideline enhancements on policy grounds cannot justify its failure to impose what is essentially no custodial sentence at all. Demma would have scored an offense level of 15 even with none of the enhancements that the district court said made it "impossible" to distinguish between defendants (his base offense level of 18 less the 3-level recommended decrease). Such a stripped-down offense level (which is clearly inapplicable based on the facts of this case) would still have produced a Guidelines range of 18 to 24 months of imprisonment. U.S.S.G. ch. 5, pt. A. So any policy disagreement with the Guidelines based on the alleged similarity of the enhancements does not justify the extent of the downward variance in the present case.

**C.      Substantive reasonableness**

We now turn to the issue of substantive reasonableness. The substantive-reasonableness standard recognizes that district-court judges can vary from the Guidelines range. But the discretion to vary from the Guidelines requires the district court to justify the variance. In particular, the reduced sentence must reflect, expressly or impliedly, a proper consideration of the factors set forth in 18 U.S.C. § 3553(a). *See United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018) ("The point is not that the district court failed to consider a factor or considered an inappropriate factor. . . . It's a complaint that the court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual."); *see also United States v. Boucher*, 937 F.3d 702, 707 (6th Cir. 2019) ("A substantive reasonableness challenge is not defeated by a showing of procedural reasonableness—for example, by confirming that the district court addressed each relevant factor under 18 U.S.C. § 3553(a), or even that it discussed those factors at length."). Here, the district court did not comply with its obligations under 18 U.S.C. § 3553(a).

The relevant § 3553(a) factors are the following:

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)** the need for the sentence imposed—

    **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    **(B)** to afford adequate deterrence to criminal conduct;

    **(C)** to protect the public from further crimes of the defendant; and

    **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** the kinds of sentence and the sentencing range established for—

    **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

        **(i)** issued by the Sentencing Commission . . . .

**(5)** any pertinent policy statement—

    **(A)** issued by the Sentencing Commission . . . .

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

### 1. Factors given excess weight

At the sentencing hearing, the district court focused almost entirely on Demma's individual characteristics in deciding not to impose a term of incarceration. It relied, in particular, on the testimony of Dr. Peterson and Dr. Tennenbaum, both of whom opined that Demma's use of child pornography was directly caused by his service in the military and his resulting PTSD.

To be sure, the district court did not err by recognizing Demma's military service and PTSD diagnosis under § 3553(a)(1) as considerations relevant to his sentence. *See United States v. Reilly*, 662 F.3d 754, 760 (6th Cir. 2011) (explaining that the defendant's military service and lack of criminal history were "permissible considerations in the 'variance' determination under

18 U.S.C. § 3553(a)"). But the court in the present case gave these considerations unreasonable weight in deciding to vary downwards to an essentially noncustodial sentence.

Indeed, by focusing on Demma's PTSD diagnosis to the exclusion of other considerations, the district court failed to acknowledge analogous cases within this circuit. In *Reilly*, for example, the defendant pleaded guilty to the distribution of child pornography and then challenged a within-the-Guidelines sentence of 151 months as substantively unreasonable. *Id.* at 757. Reilly, like Demma, argued that his violent experiences in combat led to his interest in child pornography. *Id.* But this court affirmed Reilly's sentence as substantively reasonable despite the claimed direct relationship between the defendant's military service and his crime. *Id.* at 761.

In other analogous cases, this court has upheld custodial sentences for possessors and distributors of child pornography who have served in the military and experienced PTSD. *See, e.g.*, *United States v. Myers*, 442 F. App'x 220, 223–24 (6th Cir. 2011) (affirming a 60-month sentence for possessing child pornography by a 20-year military veteran); *United States v. Tanner*, 382 F. App'x 421, 424 (6th Cir. 2010) (affirming a 210-month sentence for possessing and distributing child pornography by a defendant who was a "decorated combat veteran who suffered from post-traumatic stress disorder related to his military service"). Demma's military service and PTSD diagnosis, in light of the outcomes in *Reilly*, *Myers*, and *Tanner*, are not sufficient to justify what amounts to a noncustodial sentence here.

Moreover, in focusing on the role of Demma's military service as purportedly causing his crimes, the district court cast Demma more as the victim than the perpetrator, stating that Demma's crimes were "the result of his voluntary service to his community and his country" and "an unintended consequence" of his decision to serve in the Army. This court has explained, however, that "[k]nowing possession of child pornography . . . is not a crime that happens to a defendant." *Bistline I,* 665 F.3d 758, 765 (6th Cir. 2012).

As with any criminal defendant, Demma's history and personal experiences have informed his actions. But he is still a volitional actor, and Demma, as the government points out, is "not the victim[] of the crime." *See United States v. Christman*, 607 F.3d 1110, 1123 (6th Cir.

2010). We specifically note that there is no evidence in the record to support the proposition that military veterans suffering from PTSD typically become addicted to child pornography. Under the totality of the circumstances, we therefore conclude that the district court gave an unreasonable amount of weight to Demma's PTSD diagnosis in considering the § 3553(a) factors.

Nor was § 3553(a)(1) the only factor given excess weight in the district court's analysis. The court also assigned undue weight to § 3553(a)(2)(D), which requires the court to consider the need to provide "correctional treatment in the most effective manner." In particular, the court relied on the opinions of Dr. Peterson and Dr. Roush, both of whom believed that incarceration would be detrimental to Demma's treatment, in determining that a custodial sentence "would be more destructive than helpful." We find this reliance unwarranted in light of Dr. Roush's opinion that Demma could successfully continue treatment after a term of incarceration, and in light of the government's point that the prison system itself provides sex-offender treatment. *See United States v. Camiscione*, 591 F.3d 823, 833 (6th Cir. 2010) (holding that a sentence was substantively unreasonable even where the district court reasonably considered a defendant's "determination and effort to treat his condition and change his behaviors, consistent attendance and compliance with all treatment programs, [and] participation in '[b]ehavioral programs focusing on sexual disorder'").

### 2. Factors given insufficient weight

Even if the district court gave reasonable weight to some of the factors under 18 U.S.C. § 3553(a), this court has made clear that "the sentence imposed must do more." *Id*. at 833. The district court, for example, gave sparse attention to the seriousness of Demma's offense, as required of it under § 3553(a)(2)(A). The Supreme Court has explained that simple possession of child pornography, in itself, causes serious and continuing harm to victims as a result of the "trauma of knowing that images of [their] abuse are being viewed over and over." *Paroline v. United States*, 572 U.S. 434, 449 (2014). This harm, in turn, may "haunt[] the children in years to come." *Osborne v. Ohio*, 495 U.S. 103, 111 (1990). The enhancements delineated in U.S.S.G. § 2G2.2 take into account the ways in which this harm is magnified.

Noting that Demma's offense was one without any "finite ending," and after describing the effect of child-pornography possession on the market for such images, the district court discussed the seriousness of child-pornography possession in general.  It also described how Demma's offense was particularly harmful, stating that the number of images was, "if not the highest the Court has ever seen in a possession of child pornography [case], certainly not the lowest either."  But the court did not properly account for other features that made Demma's crimes particularly serious.

Section 3553(a)(2)(A) requires a more thorough consideration.  *See United States v. Robinson*, 778 F.3d 515, 519 (6th Cir. 2015) (*Robinson II*) (vacating a one-day sentence as substantively unreasonable where the district court did not discuss what made the defendant's actions "particularly egregious").  Demma's Guidelines range was significantly enhanced because the images in his possession depicted extreme, sadomasochistic content, including images of insertion or intercourse with prepubescent children.  But the district court made no mention of this fact.  *See United States v. Groenendal*, 557 F.3d 419, 426 (6th Cir. 2009) (holding that "penetration of a prepubescent child by an adult male constitutes inherently sadistic conduct").  We also note that Demma's collection of child pornography, which amounted to more than 3,600 images and 230 videos, far exceeded the amount at issue in *Bistline*, where the defendant possessed 305 images and 56 videos.  *See Bistline I*, 665 F.3d at 760.  Yet the district court in the present case did not explain why a defendant whose collection was many times larger than Bistline's should receive only a one-day sentence.

The district court also unreasonably concluded that Demma's sophisticated and extensive access to child pornography somehow made him less culpable than "someone who simply allowed his curiosity to get the better of him."  We draw the opposite conclusion; i.e., that an infrequent viewer simply overcome by curiosity should be deemed *less culpable* than someone like Demma who accessed child pornography on a daily basis by the use of complex software.

Another factor that the district court failed to properly analyze is § 3553(a)(2)(B)'s requirement that the sentencing court consider the need to provide general deterrence through sentencing.  The district court mentioned this factor only to the extent that it determined that "there are certain types of crimes, this being one of them, for which general deterrence is . . .

more myth than reality."  Because child-pornography possession is driven by addictive behavior, the court explained, imposing a custodial sentence on Demma would not affect the behavior of others.

But the district court's determination that general deterrence has no particular role in the child-pornography context is contrary to this circuit's caselaw.  As squarely stated in *Camiscione*, "[g]eneral deterrence is crucial in the child pornography context."  591 F.3d at 834. The court elaborated that "[s]entences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor."  *Id.* (quoting *United States v. Goldberg,* 491 F.3d 668, 672 (7th Cir. 2007)).  Similarly, in *Bistline I*, this court rejected the district court's determination that general deterrence would have "little [if] anything to do" with the defendant's sentence.  *Bistline I*, 665 F.3d at 767 (alteration in original).  Our court has thus made clear that general deterrence in the child-pornography context is not a "myth."  The district court's decision to give this factor little weight was therefore unreasonable.

Along with § 3553(a)(2)(B)'s imperative to "afford adequate deterrence to criminal conduct" in general, this factor also requires the sentencing court to consider the need for the sentence to provide specific deterrence to the individual defendant.  The district court discussed the role of specific deterrence in Demma's case to a point, noting that "specific deterrence can be guaranteed in a number of ways, some of which are overlapping, [including] a custodial sentence as advocated by the government, intensive treatment, or a combination of the two."  But in opining that Demma was unlikely to reoffend "as a user of child pornography," the court improperly focused its inquiry on whether Demma was likely to physically molest a child in the future.  The court noted that it needed to answer "one overarching question prior to sentencing to the extent humanly possible":  "whether the Defendant who comes before it . . . is a latent predator, someone who is likely or at least a significant risk of acting out by way of a contact offense with minors."  It also noted that "there is no indication of any contact offenses on the part of Mr. Demma."

In *United States v. Robinson*, 669 F.3d 767 (6th Cir. 2012) (*Robinson I*), however, this court explained that "[t]he emphasis should be upon deterring the production, distribution, receipt, or possession of child pornography, and not a prediction of future sexual contact with

children."   *Id*. at 777; *see also Camiscione*, 591 F.3d at 834 ("[I]t is not logical to justify a more lenient sentence on the basis that [the defendant] did not make or distribute child pornography or molest a child.").   The crime in this case, as in *Robinson*, was the *possession* of child pornography, not a contact offense with a minor.   In making the likelihood of Demma perpetrating a contact offense the "overarching question" prior to sentencing, the district court failed to properly weigh the specific-deterrence factor.

### 3.  *The relevant precedents*

Demma attempts to counter the above points by arguing that several of the cases in which this court has vacated a short sentence as substantively unreasonable in fact stand for the opposite proposition.   He specifically cites *Bistline I*, 665 F.3d 758; *Bistline II*, 720 F.3d 631; *United States v. Christman*, 607 F.3d 1110 (6th Cir. 2010); *Camiscione*, 591 F.3d 823; *Robinson I*, 669 F.3d 767; *Robinson II*, 778 F.3d 515; and *United States v. Shrank*, No. 17-6093, slip op. at 4 (6th Cir. 2019).   He argues that "the sentences ultimately imposed by the district court [in these cases], following remand, and which were not appealed by the United States, are not significantly different from the one day sentence imposed [in the present case]."

Those sentences make up no part of the law of this circuit, however, precisely because we had no ability to review them.   The unreviewed sentences therefore have little relevance to the question before us here.   Nor is our unpublished opinion in *United States v. Prisel*, 316 F. App'x 377 (6th Cir. 2008), of much importance in the present case given that we reviewed the sentence in *Prisel* for plain error.   *See, e.g*., *Robinson I*, 669 F.3d at 779.

Our overall conclusion is that, based on the totality of the circumstances, the district court weighed some factors under § 3553(a) too heavily and gave insufficient weight to others in determining Demma's sentence.   This is not to say that some other defendant possessing far fewer and less offensive images over a much shorter period of time might justify such an extreme downward variance, but that is not Demma's case.   As this court noted in *United States v. Elmore*, 743 F.3d 1068 (6th Cir. 2014), a United States Sentencing Commission report states that "fully *96.6 percent* of first-time child-pornography-possession convictions led to at least

some prison time." *Id.* at 1076 (emphasis in original). We find no basis in the record for Demma to not become part of this overwhelming statistic.

### III. CONCLUSION

For all of the reasons set forth above, we **VACATE** Demma's sentence and **REMAND** the case for resentencing consistent with this opinion.