NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0329n.06

No. 24-5186

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jul 07, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| TIMOTHY NOBLE, | ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

Before: CLAY, GIBBONS, and GRIFFIN, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Timothy Noble pleaded guilty to one count of knowingly passing counterfeit Federal Reserve notes with the intent to defraud, in violation of 18 U.S.C. § 472. The district court subsequently sentenced Noble to fifty-two months in prison and three years of supervised release. On appeal, Noble contends that his sentence is substantively unreasonable. We disagree and, for the reasons set forth below, **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Prior to the principal conviction at issue in this appeal, Noble was convicted of various felony and misdemeanor offenses in Ohio and Kentucky, including convictions in 2008 for theft after shoplifting from a Walmart; 2010 for criminal mischief after stealing tools from a barn; 2012 for (i) theft after collecting money from a car sale and not providing the car to the purchaser and (ii) burglary after taking items from his parents' home; 2019 for aggravated possession of drugs; 2020 for (i) theft after stealing merchandise from a Lowes on multiple occasions and (ii) breaking

and entering and theft after entering a construction site to commit theft; 2021 for theft after stealing a drill from a Lowes; and 2022 for attempted theft after stealing merchandise from a Home Depot.

### A. Factual Background

Noble pleaded guilty to knowingly passing counterfeit Federal Reserve notes with the intent to defraud after committing a string of fraudulent purchases in Kentucky and Ohio. On three occasions in April and May 2022, Noble used counterfeit money he purchased online to acquire a car and two trailers from unwitting sellers. Noble made the first fraudulent purchase on April 17, 2022. Using a false name, Noble contacted a man in Boone County, Kentucky who listed a 2004 Chevrolet Avalanche for sale on Facebook Marketplace. The man agreed to sell Noble the Avalanche for $4,700. That evening, Noble arrived at the man's home and exchanged forty-seven one-hundred-dollar bills for the Avalanche. The following day, the man realized that forty-one of the one-hundred-dollar bills he received from Noble were counterfeit. The man later identified Noble in a photo array conducted by a law enforcement officer as the purchaser of the Avalanche.

Noble's second fraudulent purchase proceeded in similar fashion on May 1, 2022, in Clermont County, Ohio. Using counterfeit money again, Noble purchased a trailer that had been advertised on Facebook Marketplace. The seller of that trailer later identified the Avalanche, which Noble fraudulently purchased in Kentucky the previous month, as the car Noble was driving at the time of their exchange. Two days after acquiring the first trailer, Noble used counterfeit money to purchase a second trailer in Warren County, Ohio. Later that day, Noble was arrested after being reported to police by the owner of an iPad that Noble unsuccessfully attempted to purchase with more counterfeit money. At the time of his arrest, Noble was driving the Avalanche and towing the second trailer. A subsequent search of the Avalanche revealed hundreds of

counterfeit bills, including those containing the same serial numbers as the counterfeit bills Noble used to purchase the Avalanche.

Following his arrest, Noble pleaded guilty to theft offenses in Ohio's Warren County Common Pleas court and Clermont County Common Pleas court for his fraudulent purchases of the two trailers. After pleading guilty, Noble received eight- and twelve-month sentences of imprisonment, which ran concurrently. He was discharged from Ohio state custody on December 14, 2023.

## B. Procedural History

Before Noble pleaded guilty to the Ohio state court theft offenses, on June 9, 2022, a federal grand jury in the Eastern District of Kentucky returned an indictment charging Noble with one count of violating 18 U.S.C. § 472 for using counterfeit bills to fraudulently purchase the Avalanche. On October 26, 2023, Noble pleaded guilty to the Indictment.

Prior to Noble's sentencing hearing, the probation office submitted a sentencing recommendation to the district court, and the government and Noble filed sentencing memoranda. The probation office calculated a Sentencing Guidelines range of 27 to 33 months, based on a total offense level of eleven and a criminal history category of six, and recommended that the district court sentence Noble to 45 months in prison and three years of supervised release. The government also argued that Noble should receive an above-Guidelines sentence because Noble stole the Avalanche to facilitate additional crimes and had a history of thievery. In contrast, Noble sought a 15-month sentence of incarceration, including a 12-month downward departure from the Guidelines range due to his twelve months of incarceration in Ohio for his fraudulent purchases of the two trailers.

Following Noble's guilty plea for the § 472 offense, the district court conducted a sentencing hearing on February 21, 2024. During the hearing, with no objections from the government and Noble, the district court adopted the findings and Sentencing Guidelines calculation contained in the probation office's presentence report. The district court also invited counsel for the government and Noble to supplement their written submissions with arguments concerning an appropriate sentence for Noble. During a colloquy with the government regarding the applicability of departures and variances to Noble's sentence, the district court expressed concern about Noble's potential for recidivism and whether that potential was adequately represented by Noble's criminal history category for purposes of calculating the Sentencing Guidelines range.

Later in the hearing, Noble's defense counsel pleaded for leniency and sought to allay the district court's concerns about Noble, who was thirty-five at the time, noting that several of Noble's previous convictions occurred when he was between the ages of eighteen and twenty-five. In addition, Noble's defense counsel argued that a below-Guidelines sentence for Noble was appropriate because supervised release would serve the purposes of deterrence and protection of the community, Noble's parents were willing to take Noble in upon his release and would not tolerate any criminal behavior from Noble, and Noble's crime did not involve the damage or permanent deprivation of property, as the sellers of the trailers and Avalanche had their property returned. Noble also spoke at the sentencing hearing, invoking his struggles with drug addiction and his desire to abide by the law upon release. Noble expressed his desire to "stay on the right track," noted that he had been sober while incarcerated, and stated that his parents would support him upon his release. Sentencing Hr'g Tr., R. 55, Page ID #260.

The district court ultimately sentenced Noble to 52 months' imprisonment and three years of supervised release, with credit for the 12 months he served for state convictions relating to his fraudulent purchases of the trailers, bringing Noble's total term of incarceration for the § 472 conviction to 40 months. In discussing the various considerations that factored into its sentencing decision, the district court explained its view that Noble's criminal history "may give an indication if there is going to be recidivist conduct, the nature of the conduct that may occur." *Id.* at Page ID #262. While acknowledging that Noble's substance dependency may have contributed to his past criminal acts, the district court explained that it considered Noble's past addiction an aggravating factor because he had not "demonstrated that he's able to avoid using controlled substances and, therefore, reduce the likelihood of further thefts or recidivism," a likelihood which the district court added it could not ignore. *Id.* Surveying Noble's criminal history, the district court then explained that Noble's potential for recidivism and use of the Avalanche to procure the trailers compelled it to impose an above-Guidelines sentence. The district court then imposed a fine of $8,400, reasoning that the 40-month sentence alone may not provide adequate deterrence.

Noble filed a timely notice of appeal on March 4, 2024.

## II. DISCUSSION

On appeal, Noble argues that his 52-month sentence is substantively unreasonable because it is too long both in light of the nature of his offense and the sentencing factors set forth in 18 U.S.C. § 3553(a). According to Noble, his case is "typical" and does not warrant an above-Guidelines sentence because his Guidelines range adequately accounted for his instant conviction and past crimes. Appellant's Br., ECF No. 24, 15–16. In support of his arguments, Noble asserts that his § 472 offense did not cause the seller of the Avalanche to incur a loss, and his previous convictions were primarily for "routine" theft offenses that were "not serious in nature." *Id.* at 17.

A. **Standard of Review**

We review the substantive reasonableness of criminal sentences under the abuse-of-discretion standard. *United States v. Miller*, 73 F.4th 427, 431 (6th Cir. 2023). This review is "highly deferential." *United States v. Sears*, 32 F.4th 569, 573 (6th Cir. 2022). "An abuse of discretion exists only if we are 'left with a definite and firm conviction that the district court committed a clear error of judgment.'" *United States v. Zabel*, 35 F.4th 493, 505 (6th Cir. 2022) (quoting *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020)). Due to this high bar, where "a lesser sentence might have sufficed, this Court cannot reverse a sentence simply because it determines that a different sentence would be appropriate." *United States v. Sherrill*, 972 F.3d 752, 772 (6th Cir. 2020) (citation modified).

B. **Analysis**

Assessing the substantive reasonableness of a given sentence "is a matter of whether 'a sentence is too long.'" *United States v. Milliron*, 984 F.3d 1188, 1195 (6th Cir. 2021) (quoting *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018)). That review requires the Court to "consider[] the totality of the circumstances, including 'the extent of any variance from the Guidelines range.'" *United States v. Johnson*, 26 F.4th 726, 736 (6th Cir. 2022) (quoting *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007)). The degree to which the sentence deviates from the Guidelines range is important, and there must be a "justification that is sufficiently compelling to support the degree of variance." *United States v. Morris*, 71 F.4th 475, 484 (6th Cir. 2023) (citation modified).

However, sentences above the Guidelines range are not presumptively unreasonable. *Milliron*, 984 F.3d at 1198. In fact, "[t]he substantive-reasonableness standard recognizes that district-court judges can vary from the Guidelines range." *United States v. Demma*, 948 F.3d 722,

728 (6th Cir. 2020). Upward variances are "permitted when the district court adequately addresses the § 3553(a) sentencing factors, provides a detailed rationale for the variance, and imposes a sentence that is otherwise substantively reasonable." *United States v. Small*, 988 F.3d 241, 260 (6th Cir. 2021) (citation omitted). "A sentence is substantively reasonable when the length of the sentence conforms with the goals of § 3553(a) to impose a sentence that is sufficient but not greater than necessary to serve the purposes of sentencing." *United States v. Sears*, 32 F.4th 569, 573 (6th Cir. 2022). The § 3553(a) sentencing factors include the need for the sentence imposed

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(2). The record below demonstrates that the district court properly accounted for these factors in fashioning Noble's sentence.

As an initial matter, Noble's argument that the district court erred by varying upward on account of his criminal history because the Guidelines range adequately accounted for his criminal history is at odds with our case law, which expressly "permits a sentencing court to consider a defendant's criminal history in its analysis of the 18 U.S.C. § 3553(a) factors, even when the defendant's guidelines range already reflects it." *United States v. Lee*, 974 F.3d 670, 677 (6th Cir. 2020). While the Sentencing Guidelines are the "starting point and the initial benchmark for choosing a defendant's sentence," *United States v. Bristline*, 665 F.3d 758, 761 (6th Cir. 2012) (citation modified), the Guidelines do not foreclose a district court's further consideration of that history, *United States v. Axline*, 93 F.4th 1002, 1011 (6th Cir. 2024).

Noble also wrongly asserts that the district court "simply made reference to [his] criminal history but not much else." Appellant's Br. at 16. As a general rule, criminal sentences are

substantively unreasonable if the district court "fails to consider relevant sentencing factors[] or gives an unreasonable amount of weight to any pertinent factor." *United States v. Gates*, 48 F.4th 463, 477 (6th Cir. 2022) (quoting *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008)). However, even if Noble's contention regarding the district court's consideration of factors beyond his criminal history were true, "a sentence is not necessarily substantively unreasonable because a court places greater weight on some factors than others." *Id.* at 478.

In any event, the sentencing transcript is replete with instances of the district court weighing sentencing factors beyond Noble's criminal history. For example, in weighing the need for Noble's sentence to protect the public from further crimes, the district court expressly considered the implications of an assertion by Noble's counsel that Noble's struggles with drug abuse were to blame for his criminal acts. *See* Sentencing Hr'g Tr., R. 55, Page ID #257–58 ("[I]n the context of 3553, would this create more of a danger to the public going forward or a likelihood of recidivism, or not?"). In doing so, the district court also weighed the need for Noble's sentence to provide him adequate medical care when it noted the tension between Noble's request for a downward variance with the potential benefit of a longer custodial period in the form of eligibility for participation in the Bureau of Prisons' residential drug abuse program.[1] *See id.* at Page ID #258.

---

[1] Consistent with 18 U.S.C. § 3582(a), our precedents require sentencing courts to "set forth a rationale independent of rehabilitative concerns." *United States v. Rucker*, 874 F.3d 485, 488 (6th Cir. 2017). However, a sentencing "court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs." *Tapia v. United States*, 564 U.S. 319, 334 (2011). While the district court in the instant case discussed Noble's potential participation in the residential drug-abuse program, it did not rest its sentencing rationale on that potential participation and therefore did not render a substantively unreasonable sentence in this respect.

The district court's repeated discussions of the § 3553(a) sentencing factors demonstrate far more than "a rote listing" of the factors. *United States v. Covington*, 461 F.3d 805, 809 (6th Cir. 2006). Furthermore, the district court's varied discussions of the sentencing factors belie Noble's portrayal of a district court solely concerned with Noble's criminal history. Even when the district court did focus on Noble's criminal history, it often did not do so in isolation from other sentencing considerations. Accordingly, the district court's review of the criminal history section of Noble's presentence report led it to conclude that Noble posed "a significant danger" to the public. Sentencing Hr'g Tr., R. 55, Page ID #262. The district court further concluded that it was "necessary to impose a variance . . . above the guideline range based upon the likelihood of recidivism" and to impose a fine to achieve deterrence. *Id.* at Page ID #263, 265–66. The district court determined that a sentence of 52 months' incarceration, including a 12-month reduction for the time Noble served for the Ohio trailer theft offenses, "would be sufficient but not greater than necessary to meet all the purposes of 3553." *Id.* at Page ID #267. Noble has not identified any substantive defect in the district court's reasoning in reaching this result. Instead, Noble has merely expressed disagreement with the district court's consideration of the sentencing factors. However, a district court's weighing of the § 3553(a) factors in a manner that does not accord to a defendant's hopes is not grounds for the vacatur of a defendant's sentence. *United States v. Gardner*, 32 F.4th 504, 532 (6th Cir. 2022).

### III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of the district court.