**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0351n.06

**No. 08-3903**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
**Jun 08, 2010**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

      Plaintiff–Appellee,

v.

CHRISTOPHER McGLOWN,

      Defendant–Appellant.

_____/

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

OPINION

Before:  CLAY and GILMAN, Circuit Judges; and ZATKOFF, District Judge.[*]

**LAWRENCE P. ZATKOFF, District Judge.**  On October 22, 2007, Christopher McGlown entered pleas of guilty to one count of bank fraud, in violation of 18 U.S.C. § 1344, and one count of uttering and possessing counterfeit checks, in violation of 18 U.S.C. § 513(a).  The district court imposed a term of imprisonment of 26 months on each count, to be served concurrently.  The district court also ordered that McGlown pay restitution in the amount of $116,904 to Huntington Bank.  For the reasons set forth below, we **DISMISS** this appeal on the basis of McGlown's waiver of his appellate rights.

_____

[*] The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I. BACKGROUND

At the time he pled guilty, McGlown was represented by Attorney Merle R. Dech, Jr. Following McGlown's guilty plea, the U.S. Probation Department prepared a presentence investigation report. McGlown, through Attorney Dech, filed objections to the presentence investigation report, wherein he asserted that he was responsible only for approximately $25,000 in losses to Sky Bank (the predecessor to Huntington Bank), not the $116,904 loss amount determined by the U.S. Probation Department. On May 30, 2008, the district court conducted an evidentiary hearing, at which McGlown was granted leave to proceed *pro se*, with Attorney Dech designated as stand-by counsel. At the evidentiary hearing, Secret Service Special Agent Jennifer Thompson testified that, after being advised by Sky Bank that counterfeit checks were being drawn on Sky Bank accounts, she conducted an investigation. The investigation led her to conclude that McGlown was the manufacturer of numerous counterfeit checks totaling $128,101 drawn on Sky Bank accounts.[1]

As part of her investigation, Thompson participated in the execution of a search warrant at 343 Mentor, Toledo, Ohio. McGlown was present during the search. A number of items were seized, including computer equipment and software, numerous altered Ohio identification cards (some with McGlown's photograph), counterfeit checks, boxes of check stock used to create counterfeit checks, debit cards and papers that included individual identifiers such as names, social security numbers and Sky Bank account numbers. A scan of the recovered computer equipment revealed check images, identification images, alias names and Sky Bank account numbers related

---

[1] This higher amount was determined post-indictment, but McGlown was sentenced and ordered to pay restitution based on the $116,904 amount specified in the indictment.

to this case. Numerous handwritten Sky Bank account numbers comparable to known samples of McGlown's handwriting were found in a notebook in McGlown's bag.

Thompson also testified that she reviewed surveillance videos of McGlown passing counterfeit checks, and she testified that some store employees presented with the checks identified McGlown in photo lineups. Thompson further testified that, although Sky Bank identified the amount of loss, her own review of the case enabled her to generate a spreadsheet detailing the individual transactions. Ultimately, Thompson identified 29 aliases used to cash 196 checks on 49 bank account numbers. Thompson testified in detail (approximately 22 pages of transcript) how McGlown was associated with each alias name and the various Sky Bank accounts from which counterfeit or forged checks were drawn.

On July 7, 2008, the district court held McGlown's sentencing hearing. At that time, McGlown withdrew all of his objections to the presentence investigation report, including his objection to the amount of the loss indicated in the indictment:

> THE COURT: It is also my understanding, Mr. McGlown, that you are withdrawing your objection to and will admit to the amount of the loss as indicated in the indictment of $116,904; is that correct?

> THE DEFENDANT: That is correct.

McGlown also waived his right to appeal at the sentencing hearing, except in limited instances:

> THE COURT: It is also my understanding that at this juncture the - - you have discussed with counsel, Mr. Deck [sic], a waiver of right to appeal; am I correct?

> THE DEFENDANT: You are correct, Your Honor.

THE COURT:  I want to read to you the right to appeal waiver to make sure you understand it, and I wish that you will listen very carefully, as you generally have in these hearings.

You acknowledge having been advised by your attorney of your right in limited circumstances to appeal the conviction or sentence in this case, including your right to appeal conferred by 18 United States Code, Section 3742, and to challenge the conviction or sentence collaterally through a post conviction proceeding, including that under Section 2255 of 28 United States Code.

You expressly are waiving your right to those appeals and those collateral attacks except as follows:  You reserve your right to appeal, A, any punishment in excess of the statutory minimum - - or maximum, I'm sorry; B, any sentence to the extent it exceeds the maximum of the sentencing range determined by the Sentencing Guidelines in accordance with the sentencing stipulations and computations which I will outline to you in a moment.  And the use of the criminal history category found applicable by me.

Nothing I've just read to you shall act to bar you from perfecting any legal remedies you may otherwise have on appeal for collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct.

Do you understand what I've just told you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you agree to that waiver?

THE DEFENDANT:  Yes, Your Honor.

After stating that the applicable advisory Guideline range was 24 to 30 months, the district court imposed a term of imprisonment of 26 months on each count, to be served concurrently.  The district court also ordered that McGlown pay restitution in the amount of $116,904 to Huntington Bank.

## II.  ANALYSIS

**A.	Waiver of Right to Appeal**

On appeal, McGlown challenges the amount of restitution that the district court ordered him to pay. McGlown expressly waived his right to appeal at the sentencing hearing, however, except under two specific instances, neither of which is presented in this appeal. McGlown was sentenced to 26 months imprisonment. Therefore, his sentence cannot be appealed because it: (1) does not exceed the statutory maximums for bank fraud (30 years) or possession of counterfeit securities (10 years), and (2) is less than the 30-month maximum under the advisory Guideline range, the two instances for which he preserved his appellate rights. We therefore conclude that McGlown waived his right to appeal the amount of restitution imposed by the district court.

**B.      Restitution Amount Imposed Not Clearly Erroneous**

Even if we considered the merits of McGlown's appeal, however, we would conclude that the district court did not err in imposing restitution in the amount of $116,904. We generally review the amount of a restitution award for abuse of discretion. *United States v. Wood*, 364 F.3d 704, 714 (6th Cir. 2004). Where an appellant has waived or failed to make objections to the restitution award at the time of sentencing, however, we will not set aside the district court's determination unless it constitutes plain error. *Id.* (citing *United States v. Bondurant*, 39 F.3d 665, 668 (6th Cir. 1994)). To establish plain error, a defendant must show:

> (1) that an error occurred in the district court; (2) that the error was plain, *i.e.*, obvious and clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings.

*United States v. Schulte*, 264 F.3d 656, 660 (6th Cir. 2001) (internal citations omitted).

The Mandatory Victims Restitution Act of 1996, 18 U.S.C. §§ 3663A-3664, requires that defendant(s) pay restitution to identifiable victims who have suffered either physical injuries or pecuniary losses as a result of certain criminal offenses. Those criminal offenses include crimes of violence, offenses against property and offenses related to tampering with consumer products. *See* 18 U.S.C. §§ 3663A(c)(1)(A) and 3664(f)(1)(A). McGlown argues that he should not be responsible for the entire restitution amount because additional persons were involved in the criminal scheme for which he was convicted, a fact that is undisputed. McGlown relies on 18 U.S.C. § 3664(h) to support his argument, but Section 3664(h) addresses situations where "the district court finds that more than 1 ***defendant*** has contributed to the loss of a victim[.]" (emphasis added). In this case, McGlown was the only person charged in the indictment. Therefore, Section 3664(h) is inapplicable.

Moreover, even if there were multiple defendants or Section 3664(h) were interpreted to apply when multiple persons were involved, Section 3664(h) explicitly gives a district court the discretion to apply joint and several liability or to apportion liability based on the participants' respective economic circumstances and contributions to the victim(s)' losses. Based on the level of McGlown's involvement in the underlying criminal scheme (as testified to by Thompson), we do not have a "definite and firm conviction that the trial court committed a clear error of judgment" in holding McGlown responsible for the entire restitution amount. *See United States v. Hunt*, 521 F.3d 636, 648 (6th Cir. 2008), *cert. den.* 129 S.Ct. 2157 (2009) (internal citations omitted).

McGlown also argues that the amount of loss was not established by a preponderance of the evidence. Pursuant to Fed.R.Crim.P. 32(i)(3)(B), a district court is required to make adequate factual

findings in calculating the loss amount when there is a "disputed portion of the presentence report or other controverted matter." *United States v. Darwich*, 337 F.3d 645, 666 (6th Cir. 2003). McGlown states that, at the evidentiary hearing on May 30, 2008 and until the sentencing hearing on July 7, 2008, he repeatedly asserted that only about $25,000 of the loss was attributable to him. This argument, however, ignores the statements of McGlown at the sentencing hearing. At the sentencing hearing, McGlown: (1) withdrew his objection to the conclusion of the U.S. Probation Department in the presentence investigation report that Sky Bank had suffered losses of $116,904, and (2) ***admitted*** that the amount of loss was $116,904. Accordingly, there was no disputed portion of the presentence investigation report with respect to the amount of loss. Therefore, the district court had the authority to find that the amount of loss was $116,904. Fed.R.Crim.P. 32(i)(3)(A). We, therefore, conclude that the district court did not clearly err in ruling that the amount of loss was $116,904.

### III. CONCLUSION

For all of the reasons set forth above, we **DISMISS** this appeal on the basis of McGlown's waiver of his appellate rights.