NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0092n.06

Case No. 16-5798

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Feb 03, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| MICHAEL MUDD, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____/ | ) | |

Before: MERRITT, MOORE, and STRANCH, Circuit Judges.

**MERRITT, Circuit Judge.** Defendant Michael Mudd was sentenced to 360 months in prison after pleading guilty to two counts of producing child pornography in violation of 18 U.S.C. §§ 2251(a) and (e). Mudd now appeals his sentence, claiming that the district court improperly calculated his sentencing range under the Sentencing Guidelines and that his sentence was "greater than necessary" to punish the conduct at issue. Because none of his claims warrant relief on appeal, we **AFFIRM** the judgment of the district court.

## I. Background

As part of an investigation into a website that facilitated the exchange of child pornography, federal authorities identified Mudd as a user of the website. Based on that

information, law enforcement obtained and executed a warrant to search Mudd's home where they seized various pieces of computer equipment.

Within twenty-four hours of the search of Mudd's home, an individual informed law enforcement that her twelve-year-old son had told her that Mudd had previously recorded him engaged in sexually explicit conduct.[1]  In a forensic interview, the boy confirmed that Mudd had photographed and taken video of him while he was engaged in sexually explicit conduct on multiple occasions between the fall of 2013 and the summer of 2014.  According to the boy, Mudd would show him pornographic photographs and videos of other boys and then ask him to mimic their poses while Mudd took photographs and video on his iPad.

On the basis of the information gained from the search and the forensic interview, a grand jury issued a fifteen-count indictment charging Mudd with thirteen counts of receipt of child pornography in violation of 18 U.S.C § 2252A(a)(2) and (b)(1), and two counts of production of child pornography in violation of 18 U.S.C. § 2251(a) and (e).  Following negotiations with the United States, Mudd entered an open guilty plea to the two production counts.  After Mudd was sentenced on the production counts, the thirteen remaining receipt counts in the indictment were dismissed upon the Government's motion.

At the sentencing hearing, the district court calculated Mudd's total offense level to be 42.  That offense level included a two-point enhancement because of the district court's finding that the offense involved "distribution" under U.S.S.G. § 2G2.1(b)(3).  Although Mudd's past criminal history yielded a result of Category III under the Guidelines, the parties agreed that the result "overstated" his criminal history.  Out of recognition of that fact, the district court reduced his criminal history to Category II.  On the basis of a total offense level of 42 and a Category II

---

[1] Forensic analysis of the seized materials would later reveal several images of the twelve-year-old victim in sexually explicit poses while naked.

criminal history, the district court calculated the sentencing range under the Guidelines to be 360 months to life. Each of Mudd's two convictions carried a statutory minimum sentence of 15 years and a statutory maximum of 30 years. 18 U.S.C. § 2251(e).

Mudd's arguments at the sentencing hearing underscored the tragic circumstances of this case. In support of his request for a sentence of fifteen years in prison—the statutory minimum—Mudd's attorney directed the court's attention to several mitigating facts: First, he noted that Mudd himself had been sexually abused by a priest as a child and had suffered severe emotional trauma as a result. Next, he emphasized that Mudd did not "revel[] in his predilections," but rather consistently sought counseling and treatment. Finally, he reminded the court of the remorse that Mudd expressed in an earlier letter to the court. Despite Mudd's arguments for mercy, the district court ordered a sentence of 360 months on each count to be served concurrently.

This appeal followed.

## II. Standard of Review

Generally, our review of the district court's sentencing decision is limited to reasonableness review under a deferential abuse-of-discretion standard. *United States v. Bazazpour*, 690 F.3d 796, 803 (6th Cir. 2012). We assess the reasonableness of sentences both procedurally and substantively. *See United States v. Erpenbeck*, 532 F.3d 423, 430 (6th Cir. 2008). A sentence is procedurally unreasonable if the district court "fail[s] to calculate (or improperly calculate[es]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the [18 U.S.C.] § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). Substantive

reasonableness requires the sentence imposed by the district court to be reasonable based upon the totality of the circumstances. *Id.*

### III. Distribution Sentencing Enhancement Claim

Mudd's first claim on appeal is that the district court erroneously found that his offense involved "distribution" of child pornography under U.S.S.G. § 2G2.1(b)(3). Because Mudd's act of showing the twelve-year-old boy various items of child pornography falls within the definition of "distribution" under § 2G2.1(b)(3), we affirm the district court's application of the enhancement.

Section 2G2.1 is the relevant sentencing guideline for an individual convicted of producing child pornography in violation of 18 U.S.C. § 2251(a). *See* U.S.S.G. App. A. Specifically, § 2G2.1 provides for a two-level enhancement "[i]f the defendant knowingly engaged in distribution." U.S.S.G. § 2G2.1(b)(3). The application notes appended to the guideline define "distribution" as "any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor." U.S.S.G. § 2G2.1, Application Note 1.

The district court found that Mudd's act of showing the boy various pieces of child pornography so that he could replicate the poses in Mudd's photographs constituted "distribution" within the meaning of U.S.S.G. § 2G2.1(b)(3) since the pornography "was used to groom [the] child" to pose for sexually explicit photographs and videos. Mudd contends that the district court's application of the distribution enhancement was erroneous for two reasons: first, because the enhancement is only applicable when a defendant distributes the child pornography

- 4 -

that they produced themselves; second, because the preponderance of evidence did not show that Mudd ever showed pornographic materials to the child.[2]  We address both arguments in turn.

Mudd's first argument against application of the distribution enhancement is that the enhancement should be cabined to cases in which the defendant distributes the child pornography that they themselves produced (as opposed to cases like this one in which the defendant merely distributes child pornography produced by a third party as a step toward the relevant production).  As the district court noted, the authorities on this question are mixed.  Mudd alleges that the Sentencing Commission unofficially opined to the probation officer in this case that the narrower interpretation was correct because § 2G2.1 offenses—unlike § 2G2.2 offenses (trafficking child pornography)—are not subject to "expanded relevant conduct" analysis provided for in U.S.S.G. § 1B1.3(a)(2).  On the other hand, the Government relies upon the plain text of §2G2.1(b)(3), the accompanying explanatory notes, and the existing case law interpreting the distribution enhancement—all of which seem to favor the broader interpretation.

The Sentencing Commission's support for its interpretation that the distribution of child pornography made by a third party cannot provide a basis for the distribution enhancement under § 2G2.1 is not apparent from the face of the relevant Guidelines.  While § 1B1.3(a)(2) does permit consideration of acts and omissions that were part of the "same course of conduct" or a common scheme or plan as the offense of conviction in § 2G2.2 (trafficking) cases, that fact does not preclude the sentencing court from considering "acts . . . committed . . . by the defendant" directly in furtherance of the offense of production.  *See* U.S.S.G. § 1B1.3(a)(1).  Rather, § 1B1.3(a)(2)'s "expanded relevant conduct" analysis exists to permit courts to consider a

---

[2] Mudd also contends that the district court's ruling was erroneous because the cases cited by the Government as support for applying the enhancement were distinguishable from Mudd's case.  While that may be true, that fact alone does not provide an independent basis for the conclusion that the district court's interpretation of § 2G2.1 was error.

broader cross-section of conduct when two offenses must be "grouped" under U.S.S.G. § 3D1.2(d). *See* U.S.S.G. § 1B1.3, Application Note 5(A). When the relevant acts were committed directly in furtherance of the convicted offense, "expanded relevant conduct" analysis is not necessary to allow the court to consider the act as a part of sentencing. *See* U.S.S.G. § 1B1.3(a)(1).

The text of § 2G2.1, the application notes accompanying it, and the case law interpreting it all weigh in favor of its applicability in cases where the defendant shows a victim child pornography produced by a third party in order to "groom" the child for a contemplated production. The meaning of "distribution" in common parlance would certainly include purposeful sharing with another. *See Distribution*, Black's Law Dictionary (10th ed. 2014) ("The act or process of . . . giving out."). Further, the definition of "distribution" under § 2G2.1 is capacious, including "any act . . . related to the transfer of material involving the sexual exploitation of a minor." U.S.S.G., Application Note 1. The Application Note refers to "material involving sexual exploitation of a minor" generally; it does not make any attempt to limit the definition of that phrase to materials produced by the defendant. *Id.* Moreover, federal courts reviewing the distribution enhancement have adopted a broad interpretation of its applicability. *See United States v. Broxmeyer*, 699 F.3d 265, 282 (2d Cir. 2012) (distribution of images produced by the defendant after completion of the production offense sufficient to justify distribution enhancement because the court could legitimately consider "not only the specific conduct satisfying the elements of the crime of conviction, but all conduct 'relevant' to the crime as detailed in § 1B1.3").

Here, Mudd showed the victim "photographs of other boys in specific poses in order to have [the victim] recreate the same poses." As the district court noted, this act was committed in

order to "groom" the victim for the eventual production of child pornography. Since the acts of distribution committed by the defendant were in direct furtherance of—and, therefore, relevant to—the crime of production, the district court's application of the distribution enhancement was proper.

Mudd's second argument is that—regardless of the scope of the distribution enhancement's applicability—the district court erred by applying it in his case because there was insufficient evidence that Mudd had showed the victim child pornography in the first place. Because the fact of distribution does not affect the statutorily authorized maximum penalty for the underlying crime of production, the Government was only required to prove it to the judge by a preponderance of the evidence. *See United States v. Jones*, 829 F.3d 476, 477 (6th Cir. 2016). Contrary to Mudd's arguments, the available evidence clearly indicated that Mudd had shared various items of child pornography with the victim as a tool to demonstrate which poses the child should imitate in the material Mudd sought to produce himself. The Probation Officer's draft Presentence Investigation Report contained an entire paragraph specifying that Mudd would use other pieces of child pornography to show the victims how they should pose. After acknowledging that Mudd had received the Report, his attorney stated: "We find no errors." In addition to Mudd's apparent stipulation to the fact that he had shown the victim various items of child pornography, a Postal Inspector also testified via affidavit that many of victim's poses in the seized materials were similar to poses found in the child pornography that Mudd had previously ordered online. Since Mudd never objected to the veracity of any of this evidence and offered no proof to the contrary, the district court's conclusion that Mudd had shown his victims child pornography was supported by at least a preponderance of the evidence.

For the reasons stated above, we hold that the district court did not abuse its discretion by applying the distribution enhancement when calculating Mudd's sentencing range.

### IV. Criminal History Downward Departure Claim

Mudd's second claim on appeal is that the district court abused its discretion by lowering his criminal history from a properly calculated Category III to a Category II when the parties agreed that Mudd's criminal history was overstated and that a Category I classification was appropriate. We reject this claim because the district court was aware of its discretion to lower Mudd's criminal history to a Category I.

The Sentencing Guidelines provide that the district court may reduce a defendant's criminal history category "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history." U.S.S.G. § 4A1.3(b)(1). By its own terms and in light of our precedents construing that language, it is clear that this provision vests the district court with discretion to fashion relief—as opposed to an obligation to take specific actions—when a defendant's criminal history category is over-represented. *See, e.g.*, *United States v. Johnson*, 553 F.3d 990, 998–99 (6th Cir. 2009).

This court generally refuses to disturb a district court's decision denying a discretionary downward departure "unless the record shows that the district court was unaware of, or did not understand, its discretion to make such a departure." *Id.* at 999. Here, the parties agreed that the Category III result under the Guidelines calculations overstated Mudd's criminal history, which consisted of two convictions for failing to maintain insurance on his vehicle. In light of that fact, Mudd requested that the court grant a downward departure to Category I. And while the district court agreed that the Category III classification overstated Mudd's history, the court decided to depart down to Category II instead of Category I. While not the result that Mudd preferred, the

fact that the trial judge granted a departure to Category II provides clear proof that he understood his discretion to grant Mudd's motion in its entirety. Accordingly, we refuse to disturb the district court's decision on that point.

## V. Substantive Unreasonableness Claim

Mudd's final claim is that the district court's sentence of 360 months imprisonment is substantively unreasonable. Mudd does not claim on appeal that the district court failed to consider the mandatory sentencing factors enumerated at 18 U.S.C. § 3553(a). Rather, he contends that the district court gave undue weight to "the need for the sentence imposed . . . to protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2)(c), at the expense of a thoughtful consideration of Mudd's personal history and character traits. The essence of his claim appears to be that the sentence imposed—360 months in jail—was "greater than necessary" to ensure the purposes of sentencing were achieved. 18 U.S.C. § 3553(a). While this court might have weighed the factors differently in the first instance, we uphold the district court's sentence since it did not amount to an abuse of discretion.

A sentence is substantively unreasonable when—among other possible defaults—the district court "gives an unreasonable amount of weight to any pertinent [sentencing] factor." *United States v. Fields*, 763 F.3d 443, 455 (6th Cir. 2014). Mindful of our institutional limitations as a reviewing court, we exercise "a great deal of deference" when reviewing a defendant's sentence for substantive reasonableness. *Id.* To that end, we presume sentences falling within the Guidelines range to be substantively reasonable. *Id.*

Here, the statutory minimum sentence was 180 months and the statutory maximum was 360 months. 18 U.S.C. § 2251(e). The district court calculated the Guidelines range to be 360 months to life. Because the district court's sentence was at the lowest end of the Guidelines

range, we presume that it is substantively reasonable. *Fields*, 763 F.3d at 455. That presumption notwithstanding, Mudd maintains on appeal that a 360-month sentence is substantively unreasonable because it is "greater than necessary" in light of his history of sexual abuse, the remorse that he has shown, and his repeated attempts to seek counseling and treatment.

When the district court rejects a defendant's nonfrivolous arguments that the § 3553 factors weigh against a sentence in the Guidelines range, "the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Taylor*, 800 F.3d 701, 714 (6th Cir. 2015). The record in this case leaves no room to debate that the district judge gave thoughtful consideration to the defendant's arguments and made great efforts to explain his reasons for rejecting them. The district judge made clear that it understood Mudd's argument, stating:

> It's a sad case, sad all around. Mr. Mudd has a personal history that's tragic. We all know it. He was abused himself by a person in power, almost the ultimate power, and who himself, the punisher, really avoided punishment in this case. And then he has had a predilection that has called upon his worst demons, as [defense counsel] indicated.
>
> I'm sure in his good moments, as we've heard him speak here, he grieves over what he's done, he wishes it hadn't happened, he wishes he hadn't had those thoughts, and he wishes he hadn't been caught. Unfortunately, he has a history of relapse and succumbing to his predilection.

However, the trial judge also made clear his apprehension about the extent to which Mudd's history of relapse and failed treatment might endanger additional children in the future:

> As I said before, he's made some good faith efforts to deal with his predilection. He's tried and I'm sure thought from time to time he was through with it. But he kept coming back. It kind of escalated really to the end of it. And he has not been able to do that.
>
> The Court is very concerned that if the defendant did not receive a significant penalty that he would be a danger to the community, a danger to minors because of his predilection, because he's proven by history that he hasn't been able to

overcome it despite his good faith efforts to do so. I think that's very strong in my mind in this case.

The district judge clearly understood Mudd's argument for a lower sentence on the basis of his personal history and characteristics, but he reasonably believed that the risk associated with Mudd's apparent inability to overcome his addiction outweighed those considerations. Since the district judge provided a sufficient explanation for rejecting Mudd's request for a below-Guidelines sentence of 180 months, Mudd has not provided evidence sufficient to rebut our presumption that his within-Guidelines sentence was reasonable.

For the reasons stated above, the judgment of the district court is **AFFIRMED**.

**MERRITT, Circuit Judge, concurring.** Independently of my colleagues, I would observe that the district judge made a highly pessimistic prediction about the likely effect of Mudd's participation in the Sex Offender Treatment Programs made available to federal prisoners by the Bureau of Prisons. *See* 18 U.S.C. § 3621(f)(1)(B); *see also* U.S. Sentencing Comm'n, 2012 Report to Congress: Federal Child Pornography Offenses, at 282–84 (2013). The parties and the district court all agreed that these programs were some of the best available, but the court still opted for the statutory maximum sentence in order to minimize the risk of harm to additional children after Mudd is released. Implicit in this line of reasoning is skepticism of the efficacy of the cognitive-behavioral therapy made available by the Bureau of Prisons. But that skepticism is contradicted by the weight of scientific literature. *See, e.g.*, Roger Przybylski, *The Effectiveness of Treatment for Adult Sexual Offenders* (2015), http://www.smart.gov/pdfs/ TheEffectivenessofTreatmentforAdultSexual Offenders.pdf ("[T]he evidence suggests that that treatment for sex offenders—particularly cognitive-behavioral/relapse-prevention approaches— can produce reductions in both sexual and nonsexual recidivism."). Regrettably, our current sentencing regime requires the district judge to make a prediction thirty years into the future about the potential efficacy of the Sex Offender Treatment Programs in each defendant's case. A better system would permit the sentencing judge to order a lower sentence contingent upon a report from the Bureau of Prisons that the defendant had been successfully rehabilitated while in custody. At present, the statutory and administrative laws regarding child pornography do not grant such authority to sentencing courts, and we have no argument before us that the Eighth Amendment may require the courts to recognize and create a system based on the possibility of rehabilitation.