NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0305n.06

No. 19-3554

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
May 28, 2020
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | |
| v. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| CHRISTOPHER GOODIN, | |
| Defendant-Appellant. | |

BEFORE:    BOGGS, CLAY, and GIBBONS, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Christopher Goodin appeals his sentence for sexual exploitation of children and related child pornography offenses in violation of 18 U.S.C. §§ 2251, 2252, and 2252A. *See* 18 U.S.C. § 3742(a). Goodin was sentenced to twenty-five years in prison and was also ordered to pay approximately $150,000 in restitution to his victims and a $5,000 special assessment. Goodin raised no objections on these points in the district court.

On appeal, Goodin argues that the length of his prison sentence is substantively unreasonable. He also claims that the amount of restitution was erroneous, that restitution must be imposed by a jury instead of a judge, and that his indigency precludes imposition of the $5,000 special assessment. For the following reasons, we affirm Goodin's sentence.

### I.  BACKGROUND

#### A.  Goodin's Criminal Activity

In August 2018, the FBI's office in Salt Lake City received a complaint regarding a twelve-year-old female ("Victim 1") who sent pornographic images of herself to an adult male using the

mobile messaging application Kik. Victim 1 met someone with the username "Shorty853" on a different application called Live.me, and Shorty853 asked Victim 1 to download Kik instead. She did so, registering with the username "Fungirl12901."

As a result of their interactions, Victim 1 believed that Shorty853 was also a minor female. Once Victim 1 was on Kik, Shorty853 sent her sexually explicit images of an underage girl, whom Victim 1 believed to be the user behind Shorty853. Victim 1 then sent Shorty853 images of herself in return.

At some point, Shorty853 told Victim 1 that another Kik user—SamBam01—was harassing Shorty853 and had threatened to tell Shorty853's cousin that she was on Kik. Victim 1 contacted SamBam01 and told him to leave Shorty853 alone. In response, SamBam01 told Victim 1 to send him sexually explicit photographs, which would buy his silence. She complied. Later, SamBam01 again contacted Victim 1 and threatened to expose both her and Shorty853 unless she sent him more explicit images. Again, Victim 1 acquiesced to his demands.

As it turns out, both Shorty853 and SamBam01 were the same person: Christopher Goodin. Investigators were able to trace the Shorty853 username to an account on a dating website called "Plenty of Fish." Goodin was the owner of that account and had instructed people on Plenty of Fish to contact him through Kik using his Shorty853 account as well.

After identifying Goodin, the FBI executed a search warrant at his home and recovered two mobile phones and two laptops. In addition to the two Kik accounts and images of Victim 1, those devices also contained thousands of other photographs and videos of child pornography. These images are described in detail in the presentence investigation report ("PSR") and included infants and toddlers, bestiality, bondage, urination, and defecation. Many of these images depicted victims of child pornography known to the National Center for Missing and Exploited Children.

The FBI's search of Goodin's devices also identified a second minor female victim, a fourteen-year-old living in Ohio ("Victim 2").

### B. District Court Proceedings

On October 10, 2018, Goodin was arrested and taken into federal custody. Later that month, a grand jury returned a three-count indictment for sexual exploitation of children, receipt of child pornography, and possession of child pornography. Goodin then pleaded guilty to all three counts without a plea agreement.

Goodin's PSR noted that the offense level was 43, the maximum possible allowed by the guidelines. Thus, even though his criminal history category was I (the lowest), the guidelines sentence was life in prison. But because the statutes under which he was convicted had lower statutory maximums, the guidelines range was lowered to 840 months (seventy years). The statutory minimum was fifteen years' imprisonment.

Several statutory provisions added financial components to Goodin's sentence. For example, under the Justice for Victims of Trafficking Act ("JVTA"), 18 U.S.C. § 3014, the PSR recommended a special assessment of $5,000 per count. The PSR also noted that Goodin was required to pay mandatory restitution. Several individuals depicted in Goodin's child-pornography collection submitted restitution requests that included estimates of losses and requested specific amounts from Goodin.[1] One of the requests only included general statements about the victim's medical expenses and out-of-pocket costs based on her insurance coverage, and no specific dollar-amount request; the PSR recommended $5,000 in restitution for this victim. The PSR listed these amounts and recommended total restitution of $150,136.40.[2]

---

[1] Neither Victim 1 nor Victim 2 submitted a restitution request.

[2] The PSR listed the total amount as $150,156.40, but this appears to have been an addition error, as the total of all the individual restitution amounts was $150,136.40.

At sentiencing, Goodin said that he reviewed the PSR paragraph by paragraph with his attorney and had no objections. The government asked for a sentence of thirty years, despite the guidelines recommendation of seventy years. In support of this recommendation, the government noted that Goodin's method of extorting pornographic images from his victims was especially cruel, that his child-pornography collection was extensive and particularly depraved, and that he lied to investigators when they first executed the search warrant. Goodin's counsel in turn argued that the statutory minimum of fifteen years was an appropriate sentence, basing this argument on Goodin's acceptance of responsibility, his desire for counseling, and Goodin's own abuse as a child.

After hearing the parties' arguments, the district court walked through the sentencing factors listed in 18 U.S.C. § 3553(a) and how they applied to Goodin's case. After considering these factors, the court sentenced Goodin to twenty-five years in prison. Goodin was also placed on supervised release for the rest of his life.

As part of its sentence, the court ordered restitution in the full amounts recommended by the PSR. And finally, the court imposed a single $5,000 special assessment under the JVTA.

Goodin then appealed his sentence, and now raises four grounds for vacating his sentence. First, Goodin says that his twenty-five-year sentence was unreasonably long given his history and characteristics. Second, he says the district court erred in its restitution order by not making specific findings as to which portion of his victims' losses he was responsible for. Third, Goodin argues that the Constitution requires that only a jury award restitution, despite this Court's contrary precedent. And fourth, Goodin argues that the district court should not have imposed the JVTA special assessment because he is indigent and unable to pay.

## II. DISCUSSION

### A. Substantive Reasonableness

Goodin first argues that his twenty-five-year prison sentence was substantively unreasonable. He thus asks this Court to vacate his sentence and remand with instructions to impose a shorter prison term. But Goodin's sentence was below the guidelines range for his crimes, which creates a strong presumption of reasonableness. Because Goodin has failed to rebut this presumption, the district court's sentence must be affirmed.

When a defendant raises a substantive-reasonableness challenge, she is essentially saying that the district court ordered too lengthy a sentence in light of the sentencing factors outlined in 18 U.S.C. § 3553(a). *See, e.g.*, *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir.), *cert. denied*, 139 S. Ct. 264 (2018); *United States v. Robinson*, 778 F.3d 515, 518–19 (6th Cir. 2015). That statute requires courts, after considering "the nature and circumstances of the offense and the history and characteristics of the defendant," to "impose a sentence sufficient, but not greater than necessary" to achieve the goals of sentencing. 18 U.S.C. § 3553(a). Those goals include just punishment for the offense, deterrence of other criminal conduct, protection of the public from the defendant, and the potential for rehabilitation. *Id.* § 3553(a)(2).

 The district court's balancing of these factors and its ultimate sentencing decision are reviewed for an abuse of discretion. *Robinson*, 778 F.3d at 518; *United States v. Lanning*, 633 F.3d 469, 473 (6th Cir. 2011). Under this standard, we look to whether the sentencing court "placed too much weight on some of the § 3553(a) factors and too little on others," granting the trial court significant deference in its decision. *Rayyan*, 885 F.3d at 442; *accord, e.g.*, *United States v. Boucher*, 937 F.3d 702, 707–08 (6th Cir. 2019); *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir.), *cert. denied*, 140 S. Ct. 44 (2019).

"The substantive reasonableness inquiry 'take[s] into account the totality of the circumstances, including the extent of any variance from the Guidelines range.'" *United States v. Cochrane*, 702 F.3d 334, 345 (6th Cir. 2012) (alteration in original) (quoting *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007)). Because the sentencing guidelines are intended to already reflect an appropriate balancing of these factors, this Court will presume that a district court's within-guidelines sentence is substantively reasonable. *United States v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008) (en banc); *see also Gall v. United States*, 552 U.S. 38, 51 (2007) ("If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness."). And when a defendant receives a *below*-guidelines sentence, her "task of persuading us that the more lenient sentence . . . is unreasonably long is even more demanding." *United States v. Curry*, 536 F.3d 571, 753 (6th Cir. 2008) (order).

At sentencing, the district court, after first considering the guidelines, walked through the § 3553(a) factors and how they applied to the facts of Goodin's case. The court described Goodin's offenses, noting that his deception of his victims and the content of his child-pornography collection were especially heinous. The court also considered Goodin's personal characteristics, noting his lack of criminal record, troubled background, alcohol abuse, mental illness, and Goodin's own victimization. The court also briefly noted the importance of deterrence, both of Goodin's future conduct and of other possible offenders.

Goodin argues that the district court's invocation of deterrence was misplaced because recidivism rates are low for child-pornography offenders on supervised release, and further contends that the district court gave insufficient weight to Goodin's own history of sexual abuse as a minor. But Goodin cannot show that the district court gave an unreasonable amount of weight

to any of these factors, *e.g.*, *Boucher*, 937 F.3d at 707–08; *Parrish*, 915 F.3d at 1047, and so the district court's presumptively reasonable sentence must stand.

Goodin attempts to downplay the importance of deterrence by arguing that "recidivism rates are low for child pornography offenders on supervision or in treatment." (Appellant Br. at 11 (citing Troy Stabenow, *A Method for Careful Study: A Proposal for Reforming the Child Pornography Guidelines*, 24 Fed. Sent'g Rep. 108, 121 (2011)).) This argument errs in several respects. First, even if recidivism for child-pornography offenses were comparatively low (a question we take no position on), Goodin has failed to show that the punishments associated with those convictions had no bearing on this outcome. *Cf. United States v. Demma*, 948 F.3d 722, 732 (6th Cir. 2020) (discussing the importance of specific deterrence in child-pornography sentencing). Second, Goodin's focus on recidivism ignores the deterrent effect that punishment may have on *other* potential offenders, a goal that could be considered even more important than deterring future criminality by Goodin alone. *See, e.g.*, *United States v. Musgrave*, 761 F.3d 602, 609 (6th Cir. 2014) (discussing the importance of general deterrence); *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010) ("General deterrence is crucial in the child pornography context . . . ."). Third, even on its own terms, the portion of the article cited by Goodin refers only to consumers of child pornography, not offenders like Goodin who actively solicit its creation. *See Stabenow*, *supra*, at 121. In short, a law review article suggesting that recidivism rates for child-pornography consumers are low cannot turn the district court's aim for deterrence—a required sentencing factor under § 3553(a)—into an abuse of discretion.

Goodin also argues that the district court failed to give enough weight to his personal characteristics, such as his own history of sexual abuse. But the record shows that the district court considered and fairly balanced these factors when fashioning its sentence. And while Goodin's

personal history might point toward a lower sentence rather than a higher one, the district court had to balance this against the particularly heinous nature of Goodin's conduct, which included blackmailing a child victim into creating and sending him sexual images.

As the government points out, this Court has previously upheld equal or even longer sentences for sexual exploitation or child-pornography production, even where the defendant raised his own past abuse as a mitigating factor. *See, e.g.*, *United States v. Mudd*, 681 F. App'x 425, 430–31 (6th Cir. 2017); *United States v. Dean*, 626 F. App'x 586, 587–88 (6th Cir. 2015) (per curiam). And in the sole, out-of-circuit case Goodin relies on for this point, the court of appeals ultimately upheld—despite the defendant's own history of abuse—a twenty-five-year prison sentence, the exact same sentence faced by Goodin here. *United States v. Sawyer*, 907 F.3d 121, 124–26 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 1300 (2019). Given this landscape, the district court's sentence—albeit considerable—was not substantively unreasonable.

At bottom, Goodin received a below-guidelines sentence for his convictions, meaning he faces a substantial burden to rebut its presumptive reasonableness. His attempt to do so amounts to an argument that the district court should have balanced the sentencing factors differently than it did, which "is simply beyond the scope of our appellate review." *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006). Because the district court's decision did not place undue weight on any one sentencing factor as opposed to another, we must affirm Goodin's sentence of incarceration.

## B. Restitution and JVTA Special Assessment

Aside from the substantive reasonableness of his prison sentence, Goodin also challenges parts of the financial component of his sentence. Specifically, Goodin says that the district court incorrectly calculated the amounts of each victim's loss attributable to him for restitution, and that his dire financial straits should have precluded the $5,000 special assessment under the JVTA. He

also says that court-ordered restitution is unconstitutional when a judge and not a jury determines the amount of the victim's loss.

Because Goodin did not raise these objections in the district court, his claims are reviewed for plain error. Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731–32 (1993). This review applies to cases where the defendant does not object to the amount of restitution or to the imposition of a JVTA special assessment, and even applies to claimed constitutional errors at sentencing where the defendant fails to object. *See, e.g.*, *United States v. Wheeler*, 797 F. App'x 964, 965 (6th Cir. 2020) (applying plain-error review to JVTA indigency challenge); *United States v. Kent*, 765 F. App'x 126 (6th Cir. 2019) (same); *United States v. Ford*, 761 F.3d 641, 656 (6th Cir. 2014) (alleged constitutional error); *United States v. Yancy*, 725 F.3d 596, 600 (6th Cir. 2013) (same); *United States v. Reaume*, 338 F.3d 577, 585 (6th Cir. 2003) (challenge to restitution order); *United States v. Schulte*, 264 F.3d 656, 660 (6th Cir. 2001) (same).

Before this Court can reverse for plain error, we must find that (1) the trial court erred, (2) the error was plainly obvious or clear, (3) it affected the defendant's substantial rights, and (4) allowing the error to stand would undermine "the fairness, integrity, or public reputation of the judicial proceedings." *Vonner*, 516 F.3d at 386 (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)). Under the second of these prongs, for an error to be plain, it must be "clear under current law." *Olano*, 507 U.S. at 734. "A lack of binding case law that answers the question presented will also preclude our finding of plain error." *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015).

Applying this forgiving standard of review, each of Goodin's claims fails: Goodin cannot show that either the restitution amount or the JVTA assessment was plainly erroneous, and his

constitutional challenge is foreclosed by binding circuit precedent. Accordingly, we affirm the financial component of Goodin's sentence as well.

### 1. Amount of Restitution

Goodin's first challenge concerns the amount of restitution ordered by the district court. According to Goodin, the district court plainly erred because it never explained the basis for its restitution award, and instead relied solely on the PSR's recommendations and the victims' submissions to the court.

Specifically, Goodin points to *Paroline v. United States*, 572 U.S. 434 (2014), which addressed the amount of restitution owed by each defendant who possessed images of a child pornography victim. *Paroline* held that courts cannot order each defendant who possessed a victim's images to pay the entire amount of her losses, since that approach "would amount to holding each possessor of her images liable for the conduct of thousands of other independently acting possessors and distributors," an outcome that is "so severe it might raise questions under the Excessive Fines Clause of the Eighth Amendment." *Id.* at 455–56. Instead, the amount of restitution must account for "the defendant's relative role in the causal process that underlies the victim's general losses." *Id.* at 458. The *Paroline* Court outlined several "rough guideposts" that courts could consider when making this assessment in possession cases, including an estimate of the number of other offenders and the quantity of images possessed by the defendant. *Id.* at 458–60. According to Goodin, because the PSR and the attached submissions by the victims failed to include this information, the district court plainly erred when it adopted the recommended amounts of restitution.

Normally, when a defendant challenges the amount of restitution ordered by the district court, the court of appeals will review that order for an abuse of discretion. *E.g.*, *United States v. Dunigan*, 163 F.3d 979, 981 (6th Cir. 1999). But since Goodin did not object to the restitution

order in the district court, we will only review the order for plain error. *E.g.*, *Reaume*, 338 F.3d at 585; *Schulte*, 264 F.3d at 660.

This standard of review dictates the outcome of Goodin's appeal. While the PSR did not walk through the *Paroline* factors and did not specifically calculate the number of other perpetrators or the quantity of each victim's images possessed by Goodin, the amount of restitution requested for each victim was a small fraction of the total losses claimed in their submissions. Goodin did not object to these amounts, suggesting that he agreed the estimates were appropriate reflections of his "relative role." *Paroline*, 572 U.S. at 458. While this might be a different case had the district court completely disregarded the core holding of *Paroline*, say, by ordering restitution equal to the entire amount of all the victims' claimed losses, our precedents show that no further fact-finding was required when the requested amount appears facially reasonable and the defendant failed to object.

For example, in *United States v. Sexton*, 894 F.3d 787, 799–801 (6th Cir.), *cert. denied*, 139 S. Ct. 415 (2018), the defendant in a fraud case challenged the loss amounts recommended in the PSR and adopted by the district court. Specifically, with respect to legal fees claimed by one of the victims, the record did not contain enough information to assess whether the fees were incurred due to the victim's participation in the government's investigation, which is required for restitution under the applicable statute. *Id.* at 800–01 (citing *Lagos v. United States*, 138 S. Ct. 1684, 1688, 1690 (2018)). But Sexton never objected. And while "a district court is required to make adequate factual findings in calculating the loss amount when there is a 'disputed portion of the presentence report or other controverted matter,'" this requirement does not apply to *undisputed* portions of the PSR. *Id.* at 801 (quoting *United States v. McGlown*, 380 F. App'x 487, 491 (6th Cir. 2010)). Thus, "because Sexton did not dispute the restitution amount, the district court was not required to

make more specific factual findings," and so Sexton's challenge could not succeed on plain-error review. *Id.*; *see also United States v. Leal*, 933 F.3d 426, 432–33 (5th Cir.) (upholding a restitution order on plain-error review in part because, even though the victims failed to submit evidence as to several *Paroline* factors, the award was a small percentage of the victim's total losses), *cert. denied*, 140 S. Ct. 628 (2019).

Similarly, in *United States v. Koeberlein*, 161 F.3d 946, 951–52 (6th Cir. 1998), this Court rejected a plain-error challenge where the defendant was provided with the PSR's recommended amounts of restitution in advance of sentencing, even where those amounts conflicted with his earlier plea agreement. The *Koeberlein* court upheld the award under plain-error review because, where the "defendant was provided in advance of sentencing with a recommended restitution order" and nevertheless failed to object, the district court's imposition of the recommended amount of restitution did not undermine "the fairness or integrity of the judicial proceeding." *Id.* at 952. This reasoning applies with equal force here.

Goodin's reliance on *United States v. Mobasseri*, 764 F. App'x 549 (6th Cir. 2019), to avoid this conclusion is misplaced. In *Mobasseri*, the defendant *did* object to the amount of restitution, arguing that the victims had not established his relative role in causing their losses (as required by *Paroline*). *Id.* at 549–50. The district court acknowledged this objection, but never explained its reasons for rejecting it and for ordering restitution at the amounts listed in the PSR. *Id.* On appeal, then, Mobasseri argued that the district court failed to adequately explain its reasons for ordering restitution, which this Court found was plain error. *Id.* at 550. But since Goodin said he had no objection to the PSR's findings, which included the restitution amounts, *Mobasseri* does not suggest plain error in this case.

The other case upon which Goodin relies, *United States v. Jones*, 747 F. App'x 348 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1591 (2019), was not a plain-error case. Unlike Goodin, Jones objected to the government's restitution proposal, but the district court ruled against him without explanation. *Id.* at 359–61. As explained above, the requirement for fact-finding by the district court is greatly diminished when a defendant does not contest a recommendation in the PSR, and given the amount of restitution and the facts that were available in the record, Goodin has failed to meet his heavy burden in showing plain error on appeal.

### 2. Constitutionality of the Restitution Regime

Goodin also challenges the constitutionality of court-ordered restitution, arguing that because the judge alone determines the amount of the victim's loss, the federal restitution regime violates his Sixth Amendment right to a trial by jury. But this Court has repeatedly rejected this argument. *E.g.*, *United States v. Sawyer*, 825 F.3d 287, 297 (6th Cir. 2016); *United States v. Churn*, 800 F.3d 768, 780–83 (6th Cir. 2015). Goodin admits this fact and says that he only raises this argument to preserve it for review by the Sixth Circuit sitting en banc or by the Supreme Court. Accordingly, at the panel stage of this case, we must reject Goodin's constitutional challenge to the district court's restitution order. *See Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.").

### 3. JVTA Assessment

Finally, Goodin says that the district court plainly erred in ordering him to pay the $5,000 special assessment pursuant to the JVTA. Under the JVTA, the district court cannot order the otherwise mandatory special assessment if the defendant is indigent. 18 U.S.C. § 3014(a); *United*

*States v. Shepherd*, 922 F.3d 753, 757 (6th Cir. 2019). On appeal, Goodin says that he was clearly indigent because he was over $25,000 in debt at the time of his conviction, will owe over $150,000 in restitution, and has a limited future earning potential.

Normally, when assessing indigency for purposes of the JVTA, this Court will review the factual question of whether a defendant is indigent for clear error, but will assess the legal definition of indigency de novo. *Shepherd*, 922 F.3d at 757. But because Goodin failed to object in the district court, we only review his claim for plain error. *E.g.*, *Wheeler*, 797 F. App'x at 965; *Kent*, 765 F. App'x at 126.

In this circuit, district courts determine indigency under the JVTA by assessing both a defendant's current and future ability to pay the assessment. *Shepherd*, 922 F.3d at 759. This future ability includes both potential in-prison and post-release earnings. *See United States v. Wandahsega*, 924 F.3d 868, 889 (6th Cir. 2019). The defendant carries the burden of proving indigency. *Id.* at 889–90.

Because Goodin has almost no cash and approximately $25,000 in debt, even before the $150,000-plus restitution order discussed above, it seems clear that Goodin lacks any current ability to pay the assessment. That said, prior to his arrest, Goodin held several jobs ranging from a minimum-wage job as a driver for a car dealership to various better-paying mechanical jobs. Goodin will be in his fifties when released from prison, and the JVTA gives defendants twenty years after release from prison to satisfy the debt before it is dissolved. 18 U.S.C. §§ 3014(g), 3613(b).

Goodin argues that even with his work experience, his personal circumstances and the duration of his sentence mean it is unlikely that he will ever be able to pay the assessment. Specifically, Goodin notes that he lacks a high-school diploma or GED, that he is unlikely to land

even a low-paying prison job, and that his sex-crimes conviction will severely hamper his ability to find employment after he is released.

None of these arguments demonstrate plain error. *Shepherd*—a case that was not limited to plain-error review—found that the defendant was not indigent despite his significant other financial obligations, limited education, and correspondingly low potential for earnings after release. 922 F.3d at 759–60. And while Shepherd will be released from prison at a younger age than Goodin, *id.*, this difference alone cannot support a finding that the district court plainly erred in its application of *Shepherd*. Though Goodin will be in his fifties when released from prison, he has not shown that he will be unable to pay the assessment using post-incarceration earnings, never mind whether the district court plainly erred in finding otherwise.

*Wandahsega* also stands in the way of Goodin's claim. Like Goodin, the defendant there faced significant debt and nonexistent assets, and even worse than Goodin, had never held a job earning more than $10 per hour. 924 F.3d at 889. Furthermore, Wandahsega was older than Goodin and faced a similar prison term, meaning he will be in his sixties when released. *See id.* at 878. But on plain error review, the Court held that Wandahsega's prison and post-release earnings could support a future ability to pay. *Id.* at 889; *see also id.* ("Even if Wandahsega should be classified as impoverished now, and even if he earns only a minimum hourly wage when released from prison, he has not demonstrated that he will be unable to pay the assessment in increments over a twenty-year period.").

In an attempt to distinguish *Wandahsega*, Goodin focuses on Wandahsega's belief that "he will obtain employment with [the] Hannahville Indian Community upon his release." *Id.* Goodin says this "special attribute"—namely that Wandahsega "was a Native American living on the Hannahville Reservation in Michigan"—gave him a unique chance at post-release employment.

(Reply Br. at 4–5.) But *Shepherd* rejected the argument that a sex-crimes conviction alone will forestall the chance of post-release employment, and that case involved no "special attribute" that could uniquely have landed the defendant a job. 922 F.3d at 759–60. Even without *Shepherd*, Goodin cannot thread the needle of plain-error review by distinguishing away parts of the very same cases he relies on; an on-point case is necessary (though not always sufficient) to show that the district court plainly erred. *Olano*, 507 U.S. at 734; *Al-Maliki*, 787 F.3d at 794.

Finally, while Goodin argues that the district court erred by not expressly finding on the record that his future earnings could cover the assessment, this argument is directly at odds with *Shepherd*, which noted that the JVTA does not require "an explicit finding of [the defendant's] non-indigency." 922 F.3d at 760; *see also id.* ("[D]istrict courts 'retain considerable latitude in deciding which arguments to discuss and how much explanation is necessary.'" (quoting *United States v. Mitchell*, 295 F. App'x 799, 804 (6th Cir. 2008))). And *Shepherd* was not a plain-error case; as discussed above, where a defendant fails to object, the district court's obligation to place its reasoning on the record is substantially reduced. *See* Fed. R. Crim. P. 32(i)(3)(B) (requiring courts to rule on an issue at sentencing so long as the matter could affect the sentence and is "controverted" by the parties); *United States v. Hurst*, 228 F.3d 751, 760–61 (6th Cir. 2000) (holding that fact-finding on the record is not required when the defendant failed to object and "did not expressly call [the issue] to the court's attention during the sentencing hearing"); *see also Wandahsega*, 924 F.3d at 888 ("[D]etailed findings are not necessary where it can be inferred that the district court considered the defendant's ability to pay and other factors required by law." (quoting *United States v. Powell*, 423 F. App'x 602, 610–11 (6th Cir. 2011))).[3]

---

[3] In a post-argument letter, Goodin says that this Court's recent decision in *United States v. Fowler*, 956 F.3d 431 (6th Cir. 2020), requires a finding of plain error where the district court imposes the JVTA assessment "without hearing argument, considering evidence or saying

In sum, Goodin faced the burden of proving indigency and failed to object or make any showing on this point before the district court. On appeal, his arguments suggesting that it may be difficult for him to pay in the future cannot demonstrate plain error, especially given this Court's previous cases to the contrary.

## III. CONCLUSION

For the reasons stated above, we affirm the district court's sentence.

---

anything to show that it took the defendant's circumstances into account before imposing the sentence," and that these facts also describe Goodin's case. (Appellant's Rule 28(j) Letter.) *Fowler* cannot dictate the outcome of this appeal for two reasons. First, while *Fowler* says that a district court plainly errs when it imposes the assessment while completely failing to address indigency, 956 F.3d at 440, in this case, the government noted on the record the JVTA's non-indigency requirement, after which the court agreed with the government's request for the assessment. This allows the inference that the district court considered and ruled on the issue of Goodin's indigency. *See Wandahsega*, 924 F.3d at 888; *Shepherd*, 922 F.3d at 760. Second, to the extent *Fowler* requires the district court to make specific findings on the record as to the facts surrounding a defendant's indigency, it is at odds with our decisions in *Shepherd* and *Wandahsega*, in which case those earlier opinions are binding. *See Darrah v. City of Oak Park*, 255 F.3d 301, 309–10 (6th Cir. 2001) ("[W]hen a later decision of this court conflicts with one of our prior published decisions, we are still bound by the holding of the earlier case.").